506 F.2d 732
 1975-1 Trade Cases 60,131
 Marcel and Muriel MEICLER, Plaintiffs-Appellants,
v.
AETNA CASUALTY AND SURETY COMPANY et al., Defendants-Appellees.
No. 74-2139 Summary Calendar.*
*Rule 18, 5th Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431
F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Jan. 15, 1975.
 
 Robert F. Stein, Don M. Barnett, Houston, Tex., for plaintiffs-appellants.
 Henry P. Giessel, David P. Cotellesse, Philip P. John, Jr., Finis E. Cowan, Houston, Tex., R. B. Cousins, Dallas, Tex., Harry M. Reasoner, Kenneth J. Will, B. J. Bradshaw, Frank J. Knapp, Garey B. Spradley, Thomas R. McDade, Houston, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 Marcel and Muriel Meicler challenged the district court's dismissal of their complaint charging every insurance company licensed to do business in Texas with antitrust violations.[1] After careful consideration of the Meiclers' appellate contentions, we hold the district judge properly dismissed the complaint for failure to state a cause of action[2] and affirm.
 
 
 2
 The Meiclers' amended complaint charges that since August 1, 1967, every insurance company licensed to do business in Texas has engaged in a conspiracy in restraint of trade. They allege that they purchased automobile liability insurance from one of the defendant companies at a particular rate. Upon the expiration of the policy period, that insurer notified them of their reclassification into a higher rate category. The insurer refused to renew their expiring contract except at the higher premium charge. The Meiclers then allege that they contacted every other defendant and found that they too refused to sell them insurance at the original lower rate. It is this concert of action that the appellants claims violates the antitrust laws.
 
 
 3
 At the outset, appellants are confronted with the antitrust exemption contained in the McCarran-Ferguson Act, 15 U.S.C. 1011-1015. Section 1012(b) of that statute provides:
 
 
 4
 No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business of insurance: Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.
 
 
 5
 The district court found that the activity challenged here was regulated by state law, and therefore, the Section 1012(b) exemption applied. We agree with the district court's conclusion.
 
 
 6
 In 1869 the Supreme Court held that 'issuing a policy of insurance is not a transaction of commerce.' Paul v. Virginia, 75 U.S. (8 Wall.) 168, 183, 19 L.Ed. 357 (1869). After that decision it was widely assumed that congressional regulation of the insurance business was improper. But in 1944 the Supreme Court held that insurance transactions were subject to congressional regulation in general, and the strictures of the antitrust laws in particular. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Congress responded to the South-Eastern Underwriters decision with the McCarran-Ferguson Act. That Act 'was an attempt to turn back the clock, to assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation.' Securities & Exch. Comm'n v. National Securities, Inc., 393 U.S. 453, 459, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). Congress was particularly concerned lest federal antitrust laws interfere with the rate-making regulatory schemes of individual states. Id. at 458-459, 89 S.Ct. at 567-568.
 
 
 7
 The State of Texas has a comprehensive insurance rate regulation program. Each insurer must charge rates in accordance with the State Board of Insurance program. As part of this regulatory scheme, the State has adopted a system of premium surcharges to penalize those insureds with bad driving records. The Texas Driving Insurance Plan adopted by the Board on July 27, 1966, and effective August 1, 1967, assesses penalty points against drivers for traffic violation convictions, and accidents. The premium surcharges increase as a direct function of the penalty points assessed.[3]
 
 
 8
 The Meiclers' complaint launches a broadside attack on the uniform rate classification scheme. It states:
 
 
 9
 Upon the expiration of the (original insurance) contract, however, Plaintiffs were notified that the Defendant insurance company with whom they had contracted would not renew that contract. Defendant notified the Plaintiffs that it had re-classified Plaintiffs to a less favorable classification and would only renew the contract for the same coverage under new classification. Under such less favorable classification, Plaintiffs were required to pay a higher premium rate for the same insurance coverage. In attempting to obtain automobile liability insurance coverage under their old classification, Plaintiffs discovered that all Defendants refused to issue Plaintiffs such coverage and would only deal with Plaintiffs under the terms of the less favorable classification.
 
 
 10
 The complaint does not make clear whether the challenged concert of action conformed to or violated the provisions of the Texas Driving Insurance Plan. We find this ambiguity immaterial.
 
 
 11
 The surcharge provisions of the Texas Driving Insurance Plan are mandatory. They are part and parcel of the rate regulation program of the State of Texas. Each insurance company must reclassify a driver who accumulated penalty points into the higher rate classification. If the complaint is read to allege a concert of action in compliance with the Plan, then that concerted activity clearly falls within the McCarran-Ferguson Act's 1012(b) antitrust exemption.
 
 
 12
 Reading the complaint to allege concerted action to avoid the Plan's provisions does not alter the result. Appellants allege that the concert of action results in a higher premium rate charge for their automobile liability insurance. The Texas antitrust laws specifically prohibit concerted action to 'fix, maintain, increase, or reduce . . . the cost of insurance.' Texas Bus. & Comm. Code, V.T.C.A., 15.02(b)(2). Other provisions of the Texas antitrust laws specifically prohibit conspiracies of the type alleged that affect competition in the business of insurance. Texas Bus. & Comm. Code 15.02, 15.04. In their brief appellants specifically charge that each appellee is not making a separate determination of fault before assessing a penalty point when an insured is involved in an accident as the Plan requires. See Texas Driving Insurance Plan C(1)(b)(1). Even accepting appellants' dubious construction of the Plan, we hold that Texas regulates the conduct alleged under its antitrust laws, and the Section 1012(b) exemption applies.
 
 
 13
 Appellants seek to avoid the force of this Section 1012(b) exemption by relying on Section 1013(b)'s boycott exception to the antitrust exemption. That section provides: 'Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion or intimidation.' 15 U.S.C. 1013(b). As the district court noted, the legislative history indicates that the boycott exception was designed to reach insurance company 'black-lists' rather than refusal to sell to a particular segment of the public at other than a specified price. Meicler v. Aetna Cas. & Sur. Co., 372 F.Supp. 509 (S.D.Tex.1974); Transnational Ins. Co. v. Rosenlund, 261 F.Supp. 12, 26-27 (D.Or.1966). Appellants' broad construction of Section 1013(b) would emasculate the antitrust exemption contained in Section 1012(b) of the McCarran-Ferguson Act. We affirm the district court's holding that the boycott exception does not apply.
 
 
 14
 The Texas rate classification scheme requires all insurers to charge their insureds uniform rates as prescribed by the Texas Driving Insurance Plan. It is precisely this uniform action that appellants challenge. To accept their contentions would conflict with congressional intent to leave the states in charge of relations between policyholders and insurance companies. Securities & Exch. Comm'n v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). We think that the district court properly dismissed the complaint for failure to state a cause of action.
 
 
 15
 Affirmed.
 
 
 
 [1]
 The complaint alleged that plaintiffs represented the class of 'all persons, firms, partnerships, associations, and corporations similarly situated who are or have been automobile liability insurance policy holders, within the State of Texas . . ..' Since we affirm the district court's dismissal for failure to state a claim, we do not consider the propriety of a class action under Fed.R.Civ.P. 23
 
 
 [2]
 Meicler v. Aetna Cas. & Sur. Co., 372 F.Supp. 509 (S.D.Tex.1974)
 
 
 [3]
 For a more complete description of the Texas Driving Insurance Plan, see the district court's opinion. Meicler v. Aetna Cas. & Sur. Co., 372 F.Supp. 509 (S.D.Tex.1974)