Phillip M. PROCTOR, d/b/a Proctor
Auto Service, et al., Plaintiff,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY, an
Illinois Corporation, et al., Defend-
ants.

Civ. A. No. 249–72.

United States District Court,
District of Columbia,
Civil Division.

Dec. 18, 1975.

Jerry S. Cohen, Washington, D. C., for plaintiff.

Patrick F. J. Macrory, James F. Fitzpatrick, Melvin C. Garbow, Mark J. Spooner, Washington, D. C., for State Farm Mut. Auto. Ins. Co.

Earl E. Pollock, Alan H. Silberman, Chicago, Ill., John Bodmer, Jr., John F. Bruce, Washington, D. C., for Allstate Ins. Co.

Larry L. Williams, Washington, D. C., for Nationwide Mut. Ins. Co.

Thomas E. Patton, Washington, D. C., for The Travelers Corp.

John P. Arness, Washington, D. C., for Liberty Mut. Ins. Co.

Richard A. Whiting, Washington, D. C., for General Adjustment Bureau, Inc.

Denver H. Graham, Leo A. Roth, Sr., Washington, D. C., for Crawford & Co.

## MEMORANDUM OPINION

PRATT, District Judge.

This is an action by four plaintiffs in the automobile repair business against five automobile insurance companies and two companies in the business of adjusting damage claims. Plaintiffs charge defendants with violations of the Federal antitrust laws and, more specifically, with conspiracy to fix prices, in allegedly agreeing to pay only the prevailing rates for labor and parts in the adjustment of the damage claims of defendants' insureds or on their behalf.

While several other motions are pending, this Memorandum concerns only the two motions for summary judgment filed on behalf of the five insurance company defendants on the ground that their activities, whether or not otherwise constituting Federal antitrust violations, are outside the scope of the Federal antitrust laws because of the antitrust exemption for insurance companies provided by the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* (hereinafter referred to as the "McCarran Act"). This Act, passed in response to the Supreme Court's decision in *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) holding that insurance transactions were subject to Federal regulation under the commerce clause and that the antitrust laws were particularly applicable to such transactions, exempts the insurance business from regulation under the Federal antitrust laws provided that two criteria are met: (1) that the "business of insurance" is involved, and (2) that there is state regulation of the business of insurance.

The McCarran Act does not apply to the acts of "boycott, coercion and intimidation." For the reasons which are set forth, we agree that the McCarran Act exemption insulates the activities com-

plained of and that the five insurance company defendants are entitled to summary judgment.

A. *The adjustment and settlement of claims, of which the practices challenged herein are an integral part, are clearly the business of insurance within the meaning of the McCarran Act.*

For the exemption under the McCarran Act to be operative, the primary requirement is that the particular practice concern the "business of insurance" 15 U.S.C. § 1012(b). Although formal proof would seem unnecessary, the extensive record in this case shows, and plaintiffs admit, (Complaint, ¶ 12) that the automobile property insurance business involves the adjustment and settlement of claims. The insurance policy itself, the premiums paid thereon, and the payment of any claims are the key elements of the business of insurance. As the Supreme Court said in the leading case of *Securities and Exchange Commission v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969) the term "business of insurance" includes

"the relationship between the insurer and insured,

"the type of policy, which could be issued, its reliability, interpretation, and enforcement * * *

"[and] other activities of insurance companies [which] relate so closely to their status as reliable insurers * * * * "

Claims-settlement procedures, on the basis of which plaintiffs have alleged that in settling claims the defendants have agreed among themselves to fix prices for automobile repairs, concern payments to insureds or on their behalf. Clearly, such procedures are closely connected with the relationship between the insurer and insured. The adjustment practices actually followed depend upon the type of policy and its coverage and directly concern matters of policy interpretation and enforcement. The way and method an insurance company discharges claims under its policies relate closely to its status as a reliable insurer. Claims-settlement procedures are clearly "the business of insurance" as defined in *National Securities, Inc., supra.*

Finally, claims-settlement procedures have a direct connection with an insurance company's rate-making structure. The record clearly shows a close relationship between the costs of automobile repairs in Pennsylvania and Virginia, the states where plaintiffs do business, and the levels of premiums charged by defendants to its insureds. It is a fact of life that the cost of repairs, including labor charges and the cost of repair parts, paid in the settlement of damage claims are an important factor in the rate-making structure of insurance companies obligated under their policies to pay damage claims.[1] Claims-settlement practices which include activities complained of in this suit have a vital impact on rate-making and must, of necessity, be included within the term "business of insurance." *Travelers Ins. Co. v. Blue Cross of Western Pa.*, 361 F.Supp. 774 (W.D.Pa.1972), aff'd 481 F.2d 80, 83 (3rd Cir. 1973), *cert. denied* 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1974); *California League of Ind. Ins. Pro. v. Aetna Cas. & S. Co.*, 175 F.Supp. 857 (N.D.Cal.1959).

Plaintiffs place great reliance on *American Family Life Insurance Co. v. Planned Marketing Associates, Inc.*, 398 F.Supp. 1141 (E.D.Va.1974).[2] Such reliance is misplaced because of the entirely different factual setting. The plaintiff therein alleged that defendant was attempting to steal plaintiff's agents,

---

1. As would be expected, the statutes of Pennsylvania and Virginia which control the establishment of insurance rates require that the cost of paying claims be reflected in level of premiums to be charged. 40 Pa.Stat. § 1183(a); Va.Code, § 38.1–252(3) (1973).

2. For what significance it may have, this matter was settled between the parties without appeal.

policy holders and trade secrets. As Judge Warrimer's scholarly opinion points out, none of these activities were peculiar to the business of insurance and were therefore not exempt by virtue of the McCarran Act.

■ Plaintiffs' assertion that what is involved here is "the business of auto repair—not the business of insurance" is a clever, but misleading turn of phrase. It is only partially true and completely misses the point that while the primary focus of the McCarran Act is the insurer-insured relationship, such relationship is not the all-inclusive boundary of that Act. The "business of insurance" can touch relationships between insurance companies and non-policy holders such as automobile repair shops when such relationships are closely connected with the insurer-insured relationship through the profound effect of the costs of damage claims in the rate-making structure. *California League of Ind. Ins. Pro. v. Aetna Cas. & S. Co., supra* (price fixing agreement between insurance companies concerning size of commissions paid to agents).

■ To conclude, the settlement and payment of damage repair claims is (1) a basic part of the contractual obligation owed by the insurance company to the insured, whether or not the payment is made to the insured or on his behalf, (2) directly affects the rate-making structure of the insurance company and the level of premiums to be charged, and (3) is connected directly with the writing of the policy, its interpretation and enforcement. The practices challenged here are *peculiar* to the business of insurance within the meaning of the McCarran Act.

B. *The practices challenged in this case are regulated by Virginia and Pennsylvania within the meaning of the McCarran Act.*

The second and other requirement of the McCarran Act is that such practices be "regulated" under state law.

■ It should be pointed out at the outset that the concept of state "regulation," for McCarran Act purposes, is one of considerable breadth. In this connection, it is the general rule that

"[A] state regulates the business of insurance within the meaning of § 1012(b) when a State statute *generally proscribes* (*F. T. C. v. National Cas. Co.*, 1958, 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540) or *permits or authorizes* certain conduct on the part of insurance companies." (Emphasis supplied) *California League of Independent Insurance Producers v. Aetna Casualty & Surety Co.*, 175 F.Supp. 857, 860 (N.D.Cal.1959).

This case was cited with approval in *Ohio AFL–CIO v. Insurance Rating Board*, 451 F.2d 1178, 1181 (6th Cir. 1971), cert. denied 409 U.S. 917, 93 S.Ct. 215, 34 L.Ed.2d 180 (1972). See also *Crawford v. American Title Ins. Co.*, 518 F.2d 217 (N.D.Ala.1974).

■ While the character and extent of state regulation is the key to the exemption under the McCarran Act, our research indicates that in every McCarran Act case which has been reported, the pattern of state regulation has always been found sufficient to trigger the antitrust exemption. Such exemption is not affected by whether or not there is a conflict between the Federal antitrust laws and state regulations, whether or not the state enforces its regulations or whether such enforcement is effective. The mere existence of regulatory statutes capable of being enforced apparently is all that is required for the McCarran Act exemption to be applicable. See *Report of Senate Subcommittee on Anti-Trust and Monopoly*, S.Rep. 1834, 86th Cong., 2nd Sess. 5 (1960).

Since one of the plaintiffs does business in Virginia and three in Pennsylvania, our attention will now focus briefly on the laws of these two jurisdictions.

It is clear from the record before us that Virginia and Pennsylvania extensively regulate the practices challenged in this suit.

(1) *Virginia*

Virginia regulates the auto insurance business through its Bureau of Insurance, State Corporation Commission, pursuant to the Virginia Code. (6 Va. Code, Title 38.1) According to the Commissioner of Insurance of Virginia, this includes the claims-settlement practices of automobile insurers in the state. (Francis Aff. ¶ 2) Regulation contemplates and, in fact, authorizes a degree of uniformity in the actions of automobile insurance carriers through the (a) formation of rate service organizations to file proposed rates and rating plans. *Id.* §§ 38.1–242, 38.1–279.42; (b) cooperation among rate service organizations and automobile insurance companies with the exchange of loss information, experience data and information with respect to rating plans. *Id.* § 38.1–279.52 Through its Insurance Bureau, Virginia reviews the claims handling procedures of automobile insurers to assure that the procedures are fair to the claimant, the insured, other policy holders and the members of the public. The Superintendent of Insurance has authority to take appropriate action to remedy any situation where an insurer acts improperly or unfairly in discharging its duty to settle and pay physical damage claims. (Francis Aff. ¶ 2, 3.)

At the same time, Virginia has an antitrust law similar to Section 1 of the Sherman Act. It has been interpreted *in pari materia* with the Sherman Act. Applicable to activities of insurance companies when not covered by the Virginia Insurance Code, the state antitrust law prohibits price-fixing by insurance companies. *Blue Cross of Virginia v. Virginia,* 211 Va. 180, 176 S.E.2d 439 (1970). In short, if the price-fixing allegations of plaintiffs are violations of the Sherman Act, they are also subject to the Virginia antitrust law, and because of the McCarran Act the Virginia law alone is applicable.

(2) *Pennsylvania*

As in Virginia, the automobile insurance business in Pennsylvania is extensively regulated by state law. The Pennsylvania Insurance Department pursuant to the Pennsylvania Code is the regulatory agency. 40 Pa.Stat. § 1 *et seq.* Certain cooperative practices, as in Virginia, are permitted. Most significantly, it deals more directly with the automobile damage repair business and gives its Insurance Commissioner jurisdiction over unfair settlement or compromise practices of automobile insurance companies. (40 Pa.Stat. § 1155) Furthermore, the Pennsylvania Motor Vehicle Physical Damage Appraiser Act is a regulatory scheme closely related to the practices at issue in this case. (75 Pa. Stat. § 3001 *et seq.*)

The McCarran Act requires only a general regulation by states of the business of insurance. In both Virginia and Pennsylvania, the regulation is specific and, under the prevailing authorities, more than sufficient to bring the McCarran Act exemption into play.

C. *The allegations of boycott, coercion and intimidation do not preclude the applicability of the McCarran Act exemption.*

While plaintiffs concede that price-fixing in the settlement of damage claims is the core of their complaint, they also have alleged acts of boycott, coercion and intimidation. On the basis of said allegations, they assert that the McCarran Act exemption cannot apply because Section 1013(b) of the Act specifically provides that:

"Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation."

This contention is unavailing for at least two reasons. First, the claims of dispute as to material fact in this connection are vague and lack adequate record support. There appears to be no collective refusal to deal with plaintiffs since plaintiffs' services were utilized throughout the period of this suit by persons insured by plaintiffs.

Second, and perhaps more important, the boycott exception has been narrowly construed and does not have the breadth and reach which plaintiffs claim. Three recent cases are dispositive on the proposition that the " 'boycott' [exception] under the McCarran Act has a very narrow meaning . . . [and] 'was placed in the legislation to protect insurance agents from the issuance by insurance companies of a "blacklist" which would name companies or agents . . .' *Transnational Ins. Co. v. Rosenlund* [1967 Trade Cases § 72025], D.C., 261 F.Supp. 12, 16–27." *Mitgang v. Western Title Insurance Co.*, 1974–2 CCH Trade Cases § 75322 at 98026 (N.D.Cal.1974); see also *Addrisi v. Equitable Life Assurance Society*, 503 F.2d 725 (9th Cir. 1974), *cert. denied* 420 U.S. 929, 95 S.Ct. 1129, 43 L.Ed.2d 400 (1975), and *Meicler v. Aetna Casualty & Surety Co.*, 372 F.Supp. 509 (S.D.Texas 1974), *aff'd* 506 F.2d 732 (5th Cir. 1975). In *Meicler,* which involved a collective refusal by insurance company defendants to deal with plaintiff except on the basis of a certain risk reclassification, the claim was dismissed by reason of the McCarran Act. The plaintiffs' attempt to invoke the "boycott exception" was also unsuccessful, the Court stating "Appellant's broad construction of Section 1013(b) would emasculate the antitrust exception contained in Section 1012(b) of the McCarran-Ferguson Act." 506 F.2d at 734. Plaintiffs' attempt herein to invoke the "boycott exception" would have the same effect and cannot prevail on the facts of this case.

■ The allegations of boycott, coercion and intimidation do not raise questions of material fact sufficient to preclude the operation of Rule 56 and, even if such allegations had such effect, they are insufficient as a matter of law to prevent the application of the McCarran Act exemption.

## CONCLUSION

For the reasons above set forth, the practices challenged are the "business of insurance" within the meaning of the McCarran Act and are comprehensively subject to state regulations by both Virginia and Pennsylvania. Accordingly, the motions for summary judgment by the five automobile insurance company defendants are granted. The above Memorandum Opinion shall comprise the Court's Findings of Fact and Conclusions of Law.

An Order consistent with the foregoing has been entered this day.