**ROYAL DRUG COMPANY d/b/a Royal Pharmacy of Castle Hills and Disco Prescription Pharmacy et al.**

v.

**GROUP LIFE AND HEALTH INSURANCE COMPANY a/k/a Blue Shield and/or Blue Cross-Blue Shield of Texas, et al.**

Civ. A. No. SA–75–CA–131.

United States District Court,
W. D. Texas,
San Antonio Division.

June 23, 1976.

Joel H. Pullen, Tinsman & Houser, Inc., San Antonio, Tex., for plaintiffs.

Keith E. Kaiser, Cox, Smith, Smith, Hale & Guenther, Inc., San Antonio, Tex., for Group Life and Health Ins. Co.

Charles R. Shaddox, Groce, Locke & Hebdon, San Antonio, Tex., for Rieger/Medi-Save Pharmacies, Inc.

William C. Church, Jr., Kampmann, Church & Burns, San Antonio, Tex., for Walgreen Texas Co.

Richard B. Moore, Gresham, Davis, Gregory, Worthy & Moore, San Antonio, Tex., for The Sommers Drug Stores Co.

## MEMORANDUM OPINION

JOHN H. WOOD, Jr., District Judge.

### I.

Plaintiffs in this private civil antitrust action are eighteen independent pharmacy

owners doing business in San Antonio, Texas. Defendant Group Life and Health Insurance Company, also known as Blue Shield of Texas ("Blue Shield"), is an insurance company duly authorized by the Texas State Board of Insurance to transact the business of life, health and accident insurance within the State of Texas. The remaining three Defendants, Walgreen Texas Co. ("Walgreen"), The Sommers Drug Stores Company ("Sommers"), and Rieger/Medi-Save Pharmacies, Inc. ("Rieger") operate pharmacies in San Antonio, Texas.

Plaintiffs' suit is an attack upon Blue Shield's plan of operation under certain prescription drug insurance policies (the "Policy") which it issues. It is alleged that Defendants have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by agreeing, combining and conspiring to fix the retail price of drugs and pharmaceuticals, and that the activities of Defendants have caused Blue Shield's insureds not to deal with certain of the Plaintiffs, thereby constituting a group boycott. Plaintiffs further allege that Defendants have violated the Texas antitrust laws, Tex.Bus. & Comm.Code Ann. § 15.01, *et seq.*, and that this Court should exercise pendent jurisdiction over those claims.

Each of the Defendants has separately moved to dismiss the Complaint for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted. Defendants' motions are based upon the provisions of the McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq.* The motions also urge that in the absence of any valid cause of action based upon federal law, this Court should dismiss Plaintiffs' pendent claims.

Extensive discovery has been completed on the issue presently before the Court. The record includes numerous depositions, affidavits and documents, and all parties have had full opportunity to present all materials pertinent to Defendants' motions. The Court has carefully reviewed and considered all of those materials, together with the briefs submitted by the parties and the oral argument of counsel.

The facts relevant to Defendants' motions are undisputed. The Policies provide prescription drug insurance coverage. The benefits provided under the Policies entitle Blue Shield's insureds to receive prescription drugs from any pharmacy (a "Participating Pharmacy") that has entered into a written contract (the "Pharmacy Agreement") with Blue Shield. The Policies further provide that the insured is required to pay no more for each prescription filled by a Participating Pharmacy than the amount of the drug deductible set forth in the Policy. The drug deductible is $2.00. Pursuant to the terms of the Pharmacy Agreement, a Participating Pharmacy agrees to dispense drugs to Blue Shield's insureds and to accept $2.00 as full payment from the insured for each dispensed drug. Further, Blue Shield agrees to reimburse the Participating Pharmacy for the acquisition cost of each drug dispensed to its insureds. Under the terms of the Policy, if the insured has his prescriptions filled by a pharmacy other than a Participating Pharmacy, he must pay the full price charged by the pharmacy and then apply to Blue Shield for reimbursement. Blue Shield will then reimburse the insured for 75% of the usual and customary charge for the drug, less the $2.00 deductible.

Walgreen, Sommers and Rieger each own Participating Pharmacies. Blue Shield is not engaged in selling or dispensing prescription drugs as a manufacturer, wholesaler or retailer, but is engaged solely in transacting the business of life, health and accident insurance.

In 1969, Blue Shield sought authority from the Texas State Board of Insurance to begin issuing prescription drug insurance coverage in the form described above. Article 3.42 of the Texas Insurance Code provides that all new policy forms proposed to be issued by life, health and accident insurance companies must be filed with the State Board of Insurance and approved prior to issuance or use by the company. In March, 1969, Blue Shield filed with the State Board of Insurance a proposed form of the Policy and the Pharmacy Agreement

for approval prior to their issuance or use. The terms of the policy provided that Blue Shield's insureds were entitled to receive prescription drugs from Participating Pharmacies (called "participating providers" in the Policy). The Policy defined the term "participating provider" as a pharmacy who "has entered into a written contract [with Blue Shield] for the rendition of covered drugs for which benefits are provided by this [policy]." The Pharmacy Agreement was in the form described above.

In June, 1969, the Commissioner of Insurance issued a written order disapproving the issuance or use of the Policy. The Commissioner also notified the Texas Attorney General in writing of the action taken by the State Board and provided the Attorney General with copies of all pertinent documents. As a result of the disapproval order, Blue Shield did not issue or use the Policy or the Pharmacy Agreement.

Subsequent to the issuance of the disapproval order, the Policy and the Pharmacy Agreement remained under consideration by the State Board of Insurance. In September, 1969, pursuant to Article 3.42(e) of the Texas Insurance Code,* the Commissioner of Insurance issued another written order exempting the Policy from the approval requirements of Tex.Ins.Code Ann. art. 3.42.

The exemption order issued by the Commissioner of Insurance provided, in pertinent part:

"Pursuant to the authority granted by Article 3.42, Paragraph (e) of the Texas Insurance Code, the Commissioner of Insurance hereby exempts from the requirements of said Article Policy Form CC–OHDS–2 submitted by Group Life and Health Insurance Company, Dallas, Texas; and this exemption shall remain effective pending further orders from the Commissioner of Insurance.

. . . . .

"The exempt forms are described as drug service contracts, which confer upon the policy holder the right to obtain certain prescribed drugs at a cost fixed in the contract, the insurer having entered into participating agreements with dispensing pharmacies to supply the prescribed drugs to its policy holders."

It is clear that the exemption order exempted the Policy from nothing more than the requirement of approval by the State Board of Insurance. The former Deputy Commissioner of Insurance, who reviewed the Policy and the Pharmacy Agreement and then prepared the exemption order for the Commissioner's signature, testified on oral deposition that exempted policies are subject to all statutory requirements of the Texas Insurance Code and all regulatory requirements of the State Board of Insurance. He further testified that exempted policies and approved policies are subject to the same continuing regulation, control and supervision by the State Board. Other officials of the State Board of Insurance testified on oral deposition that exempted policies and approved policies are treated alike within the regulatory framework of the State Board of Insurance.

Further, the exemption order clearly shows that the Commissioner of Insurance considered the Pharmacy Agreement together with the Policy prior to issuing the exemption order. The exemption order authorized Blue Shield to issue and use the Policy in the State of Texas in the same manner as if it had been approved. Subsequent to the issuance of the exemption order, the Commissioner again advised the Texas Attorney General in writing of his action and forwarded a copy of the exemption order to the Attorney General. The exemption order has not been modified or rescinded.

Thereafter, Blue Shield made a statewide mailing to licensed pharmacies offering

---

* "The Board of Insurance Commissioners may, by written order, exempt from the requirements of this Article for so long as it deems proper, any insurance document or form specified in such order to which in its opinion this Article may not practicably be applied, or the filing and approval of which are, in its opinion, not desirable or necessary for the protection of the public." Tex.Ins.Code Ann. art. 3.42(e).

them the option of entering into the Pharmacy Agreement. Subsequent to the issuance of the exemption order, Blue Shield has issued the policy to various groups and entered into the Pharmacy Agreement with pharmacies throughout the State of Texas.

In 1974, Blue Shield entered into a health care agreement to provide insurance benefits to groups in Bexar County, Texas. Included in the proposed coverage was prescription drug insurance. In September, 1974, pursuant to Tex.Ins.Code Ann. art. 3.42, a Policy form virtually identical to the one submitted in 1969 was filed with the State Board of Insurance for approval prior to issuance or use in connection with the Bexar County program. Thereafter, in October, 1974, the Commissioner of Insurance issued a written order approving the Policy for issuance. Since receipt of the approval order, Blue Shield has issued the Policy to various groups in Bexar County, Texas. Blue Shield offered to virtually all licensed pharmacies in San Antonio, Texas, the opportunity of entering into a Pharmacy Agreement. Nine of the Plaintiffs accepted Blue Shield's offer and now operate Participating Pharmacies.

Plaintiffs agree that Blue Shield is engaged in the business of issuing prescription drug insurance coverage; however, they contend that the McCarran-Ferguson exemption is inapplicable in that Blue Shield has exceeded the business of insurance by entering into the Pharmacy Agreements, and that such agreements have nothing to do with the business of insurance. Plaintiffs further contend that regardless of whether or not Blue Shield is engaged in the business of insurance, Walgreen's, Sommers' and Rieger's participation in the Pharmacy Agreement is not the business of insurance.

For the reasons set forth herein, this Court does not agree with Plaintiffs' contentions. It is clear that the terms of the Policies which were reviewed by the State Board of Insurance and which it authorized Blue Shield to issue, expressly contemplate the execution of Pharmacy Agreements between Blue Shield and Participating Phar-

macies. Moreover, the Pharmacy Agreement is so integrally related to the Policies that it would be impossible for Blue Shield to fulfill its contractual obligations to its insureds in the absence of such agreements.

The McCarran-Ferguson Act provides that ". . . the Sherman Act, . . . the Clayton Act, and the . . . Federal Trade Commission Act . . . shall be applicable to the business of insurance to the extent that such business is not regulated by State law." 15 U.S.C. § 1012(b). To the extent a state regulates such business by state law, the Sherman Act and the other federal antitrust laws are not applicable. The exemption is effective provided that two criteria are met: (1) that the "business of insurance" is involved, and (2) that there is state regulation of the business of insurance. The McCarran-Ferguson Act does not apply to acts of "boycott, coercion or intimidation." 15 U.S.C. § 1013(b).

## II.

## THE BUSINESS OF INSURANCE

In *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), the Supreme Court held that the "business of insurance" includes the relationship between the insurer and insured; the type of policy which could be issued, its reliability, interpretation and enforcement; and other activities of insurance companies which closely relate to their status as reliable insurers. *Id.* at 460, 89 S.Ct. 564. The Pharmacy Agreement directly pertains to the relationship between Blue Shield and its insureds. Moreover, the Pharmacy Agreement is a *direct* contractual relationship between the insurer and a provider of benefits, the result of which is simply the performance of the insurer's obligations owed to its insureds under the insurance contract and nothing more. A similar *direct* contractual relationship was examined in *Travelers Ins. Co. v. Blue Cross of West. Pennsylvania*, 481 F.2d 80 (3rd Cir. 1973) *cert. denied*, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973). In that case, the Third

Circuit held that such contractual arrangements constituted the business of insurance, and thus, the relationship fell within the McCarran-Ferguson exemption. Direct contractual relationships between the insurer and a provider of benefits, as in this case, plainly relate to the "relationship between insurer and insured." The Pharmacy Agreement is based upon the provisions contained in the Policies relating to coverage and benefits, and directly concerns matters of interpretation and enforcement of the Policies. Clearly, the method adopted by Blue Shield of providing benefits under the Policies is closely connected to the relationship between Blue Shield and its insureds. The activities challenged by Plaintiffs in this action, including Blue Shield's contractual arrangements with Participating Pharmacies, constitute the business of insurance within the meaning of *SEC v. National Securities, Inc., supra.*

A program substantially similar in concept and operation to the one at issue was previously determined by the Texas Attorney General to constitute the business of insurance in the State of Texas. In response to a request for an opinion from the Texas Commissioner of Insurance, the Attorney General analyzed a prescription drug program which contemplated the filling of subscriber's prescriptions by participating pharmacies. The plan of operation was based upon a contract between the company and participating pharmacies, whereby the pharmacy agreed to charge the subscriber no more than a certain percentage of the retail price of the prescription, and the company agreed to reimburse the pharmacy for the remainder. After thoroughly discussing the program the Attorney General concluded that ". . . the plan of operation intended to be followed by Prepaid Prescription Plan, Inc. would involve the doing of an insurance business in this state". Texas Attorney General's Opinion No. WW–1475 (Dec. 11, 1962).

This Court concludes that Blue Shield's plan of operation under the prescription drug insurance Policies, including the Pharmacy Agreements, constitutes the "business"

of insurance" within the meaning of the McCarran-Ferguson Act.

## III.

## STATE REGULATION

A. *General Regulation.*

■ The McCarran-Ferguson Act renders the federal antitrust laws inapplicable when state legislation generally proscribes, permits, or otherwise regulates the conduct in question and authorizes enforcement through a scheme of administrative supervision. *Crawford v. American Title Ins. Co.,* 518 F.2d 217 (5th Cir. 1975); *FTC v. National Cas. Co.,* 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958); *Commander Leasing Co. v. Transamerica Title Ins. Co.,* 477 F.2d 77 (10th Cir. 1973).

■ The State of Texas has actively regulated the activities challenged in Plaintiffs' Complaint since the inception of Blue Shield's prescription drug insurance program. The requirement of Article 3.42 of the Texas Insurance Code that all policy forms must be filed for review and approval by the State Board of Insurance prior to issuance or use by the insurer was fully satisfied. Active regulation of the prescription drug insurance program is further shown by the written orders issued by the Commissioner of Insurance and by the fact that the Texas Attorney General was also kept fully advised of Blue Shield's prescription drug insurance program.

B. *Regulation Of Unfair Methods Of Competition In The Business of Insurance.*

■ Not only is there a scheme of general state regulation of the business of insurance involved in this action, but the Texas Insurance Code contains specific provisions applicable to the conduct alleged in Plaintiffs' Complaint. In 1951, the Texas Legislature enacted Tex.Ins.Code Ann. art. 21.21, which expressly regulates unfair competition and unfair practices in the business of insurance. The declaration of purpose of the Act states:

"The purpose of this Act is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the Act of Congress of March 9, 1945 (Public Law 15, 79th Congress) [the McCarran-Ferguson Act], by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." Tex.Ins.Code Ann. art. 21.21 § 1.

Article 21.21 specifically prohibits *"any* trade practice which is defined in [the] Act as, or determined pursuant to [the] Act to be, an unfair method of competition or unfair or deceptive act or practice in the business of insurance." Tex.Ins.Code Ann. art. 21.21 § 3. (Emphasis added) That statute grants specific administrative and supervisory powers to the State Board of Insurance, including the power to issue cease and desist orders. Penalties are provided for violation of such orders. Without doubt, the phrase "any" unfair method of competition encompasses the conduct challenged in this action. Furthermore, the oral deposition testimony establishes that the State Board of Insurance reviews all policy forms submitted to it with a view toward insuring compliance with Article 21.21, and that approved, as well as exempted policies, are subject to its provisions. Article 21.21 was specifically intended by its drafters to respond to the invitation of the McCarran-Ferguson Act and to withdraw from federal control the very conduct charged by Plaintiffs in this action, and to place such conduct under state control. Article 21.21 constitutes sufficient state regulation to activate the exemption provided in the McCarran-Ferguson Act. *Crawford v. American Title Ins. Co.*, 518 F.2d 217 (5th Cir. 1975); *Dexter v. Equitable Life Assurance Soc'y of the U. S.*, 527 F.2d 233 (2nd Cir. 1975).

### C. The Texas Antitrust Laws.

In addition to the comprehensive regulation of Blue Shield's activities provided by the Texas Insurance Code, anticompetitive practices in the business of insurance are also regulated by the Texas antitrust laws. The Texas antitrust laws declare categorically that "[e]very monopoly, trust, and conspiracy in restraint of trade . . . is illegal and prohibited." Tex.Bus. & Comm. Code Ann. § 15.04(a). Further, the Texas antitrust laws specifically prohibit conspiracies of the type alleged in Plaintiffs' Complaint. Tex.Bus. & Comm.Code Ann. § 15.02. It should be noted that Plaintiffs have included in their Complaint a pendent claim under the Texas antitrust laws based upon the same facts that Plaintiffs allege give rise to a violation of the federal antitrust laws.

The existence of a state antitrust law proscribing the conduct complained of constitutes "regulation" within the meaning of the McCarran-Ferguson Act sufficient to displace the federal antitrust laws. *Meicler v. Aetna Cas. and Sur. Co.*, 506 F.2d 732 (5th Cir. 1975); *Sanborn v. Palm*, 336 F.Supp. 222 (S.D.Tex.1971); *Transnational Ins. Co. v. Rosenlund*, 261 F.Supp. 12 (D.Ore.1966); *California League of Ind. Ins. Producers v. Aetna Cas. & Sur. Co.*, 175 F.Supp. 857 (N.D.Cal.1959).

Therefore, in addition to active regulation under the Texas Insurance Code, the existence of state antitrust statutes forbidding the conduct alleged by Plaintiffs constitutes state regulation of the business of insurance sufficient to bar application of the federal antitrust laws.

### IV.

### THE BOYCOTT EXCEPTION TO THE McCARRAN–FERGUSON ACT IS INAPPLICABLE

As in *Meicler v. Aetna Cas. and Sur. Co., supra,* Plaintiffs attempt to avoid the effect of the McCarran-Ferguson exemption by relying on the Section 1013(b) boycott exception. Plaintiffs' reliance on this exception is misplaced. The courts have narrowly construed Section 1013(b), which provides:

"Nothing contained in this chapter shall render said Sherman Act inapplicable to any agreement to boycott, coerce, or in-

timidate, or act of boycott, coercion or intimidation." 15 U.S.C. § 1013(b).

■ The sole purpose of this exception is to protect against the issuance of black-lists naming insurance companies or agents, rather than the conduct alleged by Plaintiffs in this action.

In *Meicler*, the Court stated:

"As the district court noted, the legislative history indicates that the boycott exception was designed to reach insurance company 'black-lists' rather than refusal to sell to a particular segment of the public at other than a specified price. (Citations omitted) Appellants' broad construction of Section 1013(b) would emasculate the antitrust exemption contained in Section 1012(b) of the McCarran-Ferguson Act. We affirm the district court's holding that the boycott exception does not apply." 506 F.2d at 734.

■ This case does not involve black-listing and the boycott exception is inapplicable. *Addrisi v. Equitable Life Ins. Assurance Soc'y of the U. S.*, 503 F.2d 725 (9th Cir. 1974); *Proctor v. State Farm Mut. Auto Ins. Co.*, 406 F.Supp. 27 (D.D.C.1975); *Mitgang v. Western Title Ins. Co.*, Trade Reg.Rep. (1974–2 trade cases) ¶ 75,322 at 98,024 (N.D.Cal. October 16, 1974); *Transnational Ins. Co. v. Rosenlund*, 261 F.Supp. 12 (D.Or.1966).

## V.

### APPLICATION OF THE McCARRAN–FERGUSON ACT TO THE NON–INSURANCE COMPANY DEFENDANTS

Plaintiffs contend that Walgreen, Sommers and Rieger are not entitled to the protection afforded by the McCarran-Ferguson Act because they are not insurance companies. The exemption provided in the Act is not strictly limited to insurance companies. As shown herein, it is the "business of insurance" with which the Act is concerned.

Recent cases have allowed the exemption even though the challenged activities involved parties other than insurance companies. In *Travelers Ins. Co. v. Blue Cross of West. Pennsylvania*, 481 F.2d 80 (1973), the Court applied the exemption to contracts between the insurance company and hospitals. In *Schwartz v. Commonwealth Land Title Ins. Co.*, 374 F.Supp. 564 (E.D.Pa. 1974), the exemption was applied to a fee charged to sellers of real estate by title insurance companies and agents.

■ It is clear that it is the nature of the conduct involved which must be looked at in order to determine whether or not the exemption should be applied. In the instant case, Walgreen, Sommers and Rieger, by having contractually agreed with Blue Shield to provide the benefits set out in the Policy, have become an integral part of the overall scheme of insurance coverage which is regulated by state law. Such integration of the providers of benefits under the Policies into the overall scheme places their actions under the Pharmacy Agreements within the "business of insurance", and they are therefore entitled to the protection afforded by the McCarran-Ferguson Act for it is clear that one cannot be brought within the web of potential liability under the Federal Antitrust laws for participation in the complained of activity if such activity is, as in the instant case, exempt by operation of the McCarran-Ferguson Act.

## VI.

### PLAINTIFFS' PENDENT CLAIMS

■ As shown above, the complained of activities are exempt from the Federal Antitrust laws because of the McCarran-Ferguson Act. It is clear from the pleadings on file that jurisdiction over this action does not exist by reason of diversity of citizenship. If the Federal claims are dismissed prior to trial, it is within the ambit of this Court's discretion to decline to continue to exercise jurisdiction over the pendent state claims. No unusual circumstances are present in this case which would require the Court to retain jurisdiction over the pendent claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Lazier v. Weitzenfeld*, 505 F.2d 896 (5th Cir. 1975); *Kavit*

*v. A. L. Stamm & Co.*, 491 F.2d 1176 (2nd Cir. 1974).

## VII.

### CONCLUSION

For the reasons set forth above, this Court concludes that the complained of activities constitute the "business of insurance". This Court further concludes that the State of Texas has regulated and is actively and effectively regulating such business of insurance within the meaning of the McCarran-Ferguson Act, and the Federal Antitrust laws are thereby rendered inapplicable. Accordingly, Defendants' motions will be granted. As shown herein, this Court has considered matters outside the pleadings in arriving at its decision. In doing so, the essentials necessary to support the exemption have been found to exist. Therefore, it is appropriate that Defendants' motions shall be treated as Motions for Summary Judgment and disposed of as provided in Rule 56, Federal Rules of Civil Procedure. The foregoing Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law.

An Order consistent with the foregoing will be entered.