**OHIO AFL–CIO et al., Plaintiffs-Appellants,**

v.

**The INSURANCE RATING BOARD et al., Defendants-Appellees.**

**No. 71–1202.**

United States Court of Appeals, Sixth Circuit.

Nov. 30, 1971.

Stewart R. Jaffy, Columbus, Ohio, for plaintiffs-appellants; Clayman Jaffy & Taylor, Charles E. Taylor, Columbus, Ohio, on brief.

Rudolph Janata, Columbus, Ohio, for defendants-appellees; Watters & Donovan, John P. Walsh, Warren Herland, New York City, on brief; Wright, Harlor, Morris & Arnold, Columbus, Ohio, on brief, for the Insurance Rating Board and United States Fidelity Guaranty Co.

Before PHILLIPS, Chief Judge, and McCREE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This is an antitrust action instituted by Ohio AFL–CIO, The United Autoworkers of Ohio, and Ira Thompson as a licensed automobile operator in Ohio carrying automobile liability insurance, against the Insurance Rating Board (IRB), one of its members, United States Fidelity and Guaranty Company (USF & G), and Eugene Brown, the Ohio Superintendent of Insurance, alleging violations of the Sherman Antitrust Act by a combination and conspiracy in the fixing of prices of automobile insurance premiums. It is alleged that rate increases were instituted by the IRB in Ohio in 1965, 1966 and 1968 on a statewide average for automobile liability insurance of 4.47%, 13.5% and for automobile liability and property damage of 7.9% respectively, without any state regulation.

The complaint seeks injunctive relief against the charging of rates other than the rates made effective in November 1966, against the acceptance of any further filing for rate increases during the pendency of the action, and against any combination or conspiracy to restrain trade or to monopolize trade and commerce in violation of the Sherman Antitrust Act. There is also a claim for treble damages and other statutory benefits.

There are general allegations in the complaint to the effect that the IRB and its predecessors and its members and subscribers acting in concert with various departments of insurance among the several states have violated and are now violating the Sherman Antitrust Act by unlawfully contracting, combining and conspiring to restrain trade in interstate commerce with respect to the business of automobile casualty insurance and by unlawfully contracting, combining and conspiring to control, regulate and dictate terms and fix the prices upon which automobile liability and collision insurance shall be sold throughout Ohio and other states.

It is alleged that the IRB is composed of 129 insurance companies which are members and subscribers, all of whom have started charging increased premiums approved by the IRB on July 10, 1968, for automobile insurance "all without any state regulation to the detriment of the members of the Ohio AFL–CIO, the United Autoworkers of Ohio, Ira Thompson, and all others similarly situated." It is further alleged that the insurance companies having membership in the IRB write approximately 17% of the automobile liability insurance in Ohio and approximately 22% of the physical damage insurance in that state and "through their rates and practices influence all automobile insurance rates charged throughout the state." The complaint proceeds to allege further that under Ohio law, Revised Code Chapter 3937, the IRB, its members and affiliates and other insurance companies are permitted to set the effective date of any rate increases that they desire to institute; that such rate increases become effective immediately upon the date set by the said insurance companies; that such rate increases have never been challenged in the State of Ohio by the Department of Insurance or by any one except the plaintiffs; and that "the Department does not even employ or have on its staff an actuary so as to be able to examine the rate filing." In essence the complaint is that there is an absence of state regulation in Ohio and that that state has abdicated its function of regulating the automobile insurance industry in favor of regulation by the automobile insurance industry itself. The defendants, IRB, USF & G, and the Superintendent of Insurance, moved to dismiss the complaint on the ground of lack of jurisdiction of the Court because of the exemption of the business of insurance from the operation of the antitrust laws provided for by the McCarran Act, 15 U.S.C. Sec. 1011 et seq. In the alternative, they moved for dismissal of the complaint for failure to state a claim on which relief could be granted and for summary judg-

ment on the ground that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law.

The district court in its opinion held that the Ohio statutory scheme for regulating the business of insurance constituted regulation within the meaning of 15 U.S.C. Sec. 1012(b), providing that the antitrust laws "shall be applicable to the business of insurance to the extent that such business is not regulated by State law." Answering the plaintiffs' argument that the Ohio scheme of regulation was not effective and therefore could not be deemed to constitute the kind of regulation contemplated by the McCarran Act, the district court stated: "A court is not empowered to make a policy judgment as to the type of regulation which is desirable. The Ohio legislature has adopted a statutory scheme which sets standards for insurance rates. This court is not concerned with the wisdom of the standards but with the limited question of whether or not the legislation is regulation under the McCarran Act."

Citing Federal Trade Commission v. National Casualty Co., 357 U.S. 560, 564, 78 S.Ct. 1260, 2 L.Ed.2d 1540, the court held that Ohio had provided general standards for the operation of the business of insurance and consequently that Ohio had "regulated" the business of insurance within the meaning of the statutory exemption. Pursuant to this opinion the court dismissed the complaint for lack of jurisdiction of the subject matter without considering the alternative motion for summary judgment. On appeal, the principal issue before us is whether the district court was correct in its conclusion that Ohio regulated the business of automobile insurance so as to qualify for the McCarran Act exemption.

■ Upon consideration of the applicable Ohio statutes we conclude that the business of insurance in Ohio is "regulated" to the extent contemplated by the McCarran Act.

The Supreme Court in Paul v. Virginia, 8 Wall. 168, 19 L.Ed. 357 (1868), held that the transaction of insurance business does not constitute interstate commerce and that the states were therefore free to subject such business to state regulation. See also Hooper v. California, 155 U.S. 648, 655, 15 S.Ct. 207, 39 L.Ed. 297 (1895), and New York Life Insurance Co. v. Deer Lodge County, 231 U.S. 495, 510, 34 S.Ct. 167, 58 L.Ed. 332 (1913). Consequently, the insurance business was extensively regulated by the various states. In 1944 however, the court in United States v. Southeastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, re-examined this question and came to the conclusion that an insurance company conducting a substantial part of its business across state lines is engaged in interstate commerce and is subject to regulation by Congress under the Commerce Clause of the Constitution. In consequence it was held that the Sherman Antitrust Act is applicable to the business of insurance. Reacting to this decision, Congress enacted legislation in 1945 and 1947, declaring that it was in the public interest for the business of insurance to continue to be regulated by the several states and specifically exempting such business from the operation of the antitrust laws to the extent that such business is regulated by state law. 15 U.S.C. Secs. 1011 and 1012.[1]

In Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 429–430, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342 (1946), it was held that the purpose of Congress in enacting the McCarran Act was broadly to "give support to the existing and future state systems for regulating and taxing the business of insurance." A number of authorities have considered the question of what constitutes "regulation" within the meaning of the McCarran Act so as to activate the McCarran Act exemption. Without examining these cases in detail, none of which has failed to apply the exemption, we think the United States District Court for the Northern District of California made a correct statement of the law in California League of Independent Insurance Producers v. Aetna Casualty & Surety Co., 175 F.Supp. 857, 860 (1959), when it said:

This Court is of the opinion that a State regulates the business of insurance within the meaning of § 1012(b) when a State statute generally proscribes (F.T.C. v. National Cas. Co., 1958, 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540) or permits or authorizes certain conduct on the part of the insurance companies. In F.T.C. v. National Cas. Co., supra, the Court held that there was State regulation within the meaning of § 1012(b) when a State act generally prohibited "certain standards of conduct." 357 U.S. at page 564, 78 S.Ct. at page 1262. From the above case it would seem to follow that if a state has generally authorized or permitted certain standards of conduct, it is regulating the business of insurance under the McCarran Act.

Examining the applicable Ohio statutes, we find that the state has adopted a comprehensive scheme for the regulation of automobile liability and property damage insurance, although concededly its scheme might not be as extensive or as stringent as some of the other states. The conclusory statements of the complaint in this case that Ohio has not regulated this type of insurance business or that it has not effectively done so are, in our view, untenable.

■ The McCarran Act does not define the term "regulation" and no satis-

factory definition is to be derived from its legislative history. Nevertheless, we are convinced that the controlling test is that stated by the District Court for the Northern District of California in the *Aetna Casualty* case cited above, i. e., whether the state has "generally authorized or permitted certain standards of conduct." Title 39, Chapters 3901 to 3999 of the Revised Code of Ohio, sets forth a comprehensive scheme for regulating practically all aspects of the business of insurance as transacted in that state. This includes the creation of a department of insurance, establishment of the office of superintendent of insurance, provision for appointment of employees for prompt dispatch of business, the granting of specific powers to the superintendent, including the power of inquiry, investigation and examination of insurance companies, and generally the regulation of the business of insurance. The organization of insurance companies of various kinds, domestic and foreign, are provided for. The statutes provide for the liquidation of insurance companies, the regulation of insurance agents, and the definition of investments which insurance companies may legally make. Crucial to the present case is the fact that the Ohio statutes have specifically provided for the regulation of rating organizations such as IRB, and the making, filing and use of rates for casualty insurance, including motor vehicle insurance. Chapter 3937. Each member or subscriber to a rating organization is required to adhere to the rate filing made on its behalf by such organization. 3937.06. As to filed rates, every member and subscriber has the right by and in accordance with the statute to deviate from such filed rates. 3937.06. Cooperative action among insurers in rate-making and in other matters within the scope of the statute is authorized and regulated. Chapter 3937.17 provides that the chapter pertaining to casualty motor vehicle insurance shall be liberally interpreted to the end that insurance rates shall not be excessive, inadequate, or unfairly discriminatory. Sec. 3937.-02 sets forth in specific terms the criteria which shall govern all casualty rates. Every insurer is required to file every rate which it intends to use and the information with which the insurer supports such filing if the superintendent does not have it. Sec. 3937.03(A). Each filing becomes effective immediately upon its filing and is deemed to comply with such sections unless disapproved by the superintendent as provided in Sec. 3937.04 of the Revised Code. Sec. 3937.03(C). Insurance companies are prohibited from issuing a contract or policy except in accordance with filings which are in effect for the insurer. 3937.03(H). The superintendent is authorized to cancel any contract if at any time he finds after a hearing on notice that the rate does not comply with the statutory requirements. Sec. 3937.04 (A). Such a hearing may be brought about upon written application of "any person or organization aggrieved with respect to any filing which is in effect," 3937.04(B), and a reasonable inference from the statute is that the superintendent himself may review any filings on his own initiative. While insurers may satisfy their obligation to file the rates which they intend to use by becoming a member of or a subscriber to a licensed rating organization which makes such filings, the statutes do not require any insurer to become a member of or a subscriber to any rating organization. 3937.03(B). Members and subscribers to rating organizations may file a uniform percentage decrease or increase in rates filed for them by the rating organization. 3937.06. Rating organizations themselves under Ohio law are required to be licensed and to apply for such license in accordance with the procedure outlined in 3937.05. The license is issued only after a finding by the Superintendent of Insurance that the applicant is competent, trustworthy and qualified otherwise to act as a rating organization and that its constitution, articles of agreement or association * * * and its by-laws, rules and reg-

ulations governing the conduct of its business conform to the law * * *. 3937.05(A) (4). Although cooperation among rating organizations or among rating organizations and insurers in ratemaking is expressly authorized, the superintendent may review such cooperative activities and, after hearing, direct the discontinuance of any activity which he feels to be unfair, unreasonable or otherwise inconsistent with statutory regulations. 3937.05(D). Extensive provisions are made to protect the right of members and subscribers of rating organizations relative to reasonableness of activities by the rating organization affecting the member or subscriber and providing for appeals to the superintendent. Secs. 3937.05(B); 3937.07. Both rating organizations and insurers making their own rates are required to furnish to any insured affected by a rate made by it any pertinent information as to such rate and to grant a hearing to such insured if requested. The decision of the rating organization as to its rating system is subject to appeal to the superintendent. 3937.08. At least once in every five years rating organizations are required to be examined, 3937.11, and the officers, agents and employees of the organization may be examined at any time and shall exhibit all books, records, accounts, documents, or agreements governing its method of operation. Other provisions regulate different aspects of automobile insurance in Ohio, but we think that the provisions cited demonstrate beyond doubt that the business of insurance in Ohio is comprehensively and effectively "regulated" so as to qualify such business for the McCarran Act exemption.

Appellants point to certain alleged deficiencies in the Ohio scheme of regulation. For example, it is argued that under the Ohio statutes each filing becomes effective immediately and is deemed to comply with the law unless disapproved by the superintendent, with the result that the rating bureau may put a higher rate into effect without prior approval by the state department of insurance. It is pointed out that the Ohio statutes further provide that after filing the rate remains in effect until an appeal is finally adjudicated. Moreover, if the rates filed are disapproved by the superintendent, the order of disapproval does not affect any policy made prior to the expiration date specified in the superintendent's order. A further alleged defect is the apparent provisions that no order or decision of the superintendent is effective until after final action or decision by the court on judicial review. If it should happen that the highest court should hold that such rate is excessive, the insurance companies are allowed to retain the excessive amount received.

An ideal type of regulation may possibly envision the removal of the alleged deficiencies in the Ohio statutes referred to by the appellant. Yet the question before us is not whether the Ohio method of regulation compares favorably with the regulations of other states, or whether it is an ideal manner in which to regulate the business of insurance. We are confident that Congress in enacting the McCarran Act did not intend to impose a uniform standard of regulation upon all of the states. It is our view that the congressional intent was to leave to the judgment of each state the specifics of regulation which it should see fit to adopt. Suffice it to say at this point that we are confident that the comprehensive plan adopted by Ohio is fully adequate to meet the requirements of regulation contemplated by the McCarran Act.

It is interesting to note that since the passage of the McCarran Act a number of actions have been filed in which the McCarran Act exemption has been examined in terms of state regulation of the business of insurance. Yet in no case has it been decided that the exemption was inapplicable because of a failure of state regulation. In this connection, see North Little Rock Transportation Co., Inc. v. Casualty Reciprocal Ex-

change, 85 F.Supp. 961 (E.D.Ark.1949), aff'd 181 F.2d 174 (8th Cir.), cert. denied 340 U.S. 823, 71 S.Ct. 56, 95 L.Ed. 604 (1950); California League of Ind. Ins. Producers v. Aetna Cas. & Surety Co., 175 F.Supp. 857 (N.D.S.D.Cal., 1959); Allstate Insurance Co. v. Lanier, 242 F.Supp. 73 (E.D.N.C.1965), aff'd 361 F.2d 870 (4th Cir. 1966), cert. denied 385 U.S. 930, 87 S.Ct. 290, 17 L.Ed.2d 212; and Lynch v. Insurance Rating Board, D.C.M.D.Tenn. No. 5202 unreported.

■ We find no support for the appellants' argument that the court in this case should inquire into the question as to whether the statutes of Ohio have been effectively enforced in accordance with their terms. As pointed out in the *Lynch* case, *supra,* there is nothing in the language of the McCarran Act or in its legislative history to support the thesis that the Act does not apply when the state's scheme of regulation has not been effectively enforced. The Senate Sub-Committee reviewing the intention of the McCarran Act has so interpreted the decision in the *National Casualty* case in a report which states in part as follows. (Report of the Senate Sub-Committee on Anti-Trust and Monopoly, "The Insurance Industry—Aviation, Marine and State Regulation," Rep.No.1834, 86th Cong., 2d Sess. (1960) at p. 5):

It now seems evident from this Supreme Court decision that the McCarran Act language, 'to the extent that such business is not regulated by State law,' restricts Federal authority regardless of whether the States are actively enforcing their regulations. If the States have enacted regulatory statutes, capable of being enforced within their borders, the Federal anti-trust laws would apparently not apply. In such cases, no proof would apparently be entertained as to the extent to which the law had been administratively enforced. It also seems

doubtful the Court would permit a questioning as to the quality of the State regulatory law.

Moreover in the present case, while the appellants insisted in their appellate brief and in oral argument that the Ohio scheme is a mere "pretense" and "sham", no such language is employed in the complaint. The nearest thing to an allegation that the Ohio scheme was not enforced is the statement in the complaint that insurance rate increases have never been challenged in Ohio by the Department of Insurance and that the department does not employ an actuary so as to be able to examine rate filings. These statements do not necessarily establish a policy of non-enforcement in Ohio and certainly are insufficient to show that the regulation of insurance in that state is a mere "sham" or "pretense." [2] It is true that the complaint contains a number of conclusory statements to the effect that the appellees are allowed to control insurance rates in Ohio without state regulation or with no regulation. These conclusions are not only in conflict with the elaborate statutory scheme prescribed by Ohio law, but in any event are not sufficient on a motion to dismiss for failure to state a claim to develop a factual issue which the appellees are required to meet.

As we have concluded that the State of Ohio has regulated the business of automobile insurance within the meaning of the McCarran Act exemption, it follows that the district judge was correct in granting the motion to dismiss the complaint. It then became unnecessary for him to consider the motion for summary judgment for, as we have pointed out, the pertinent question before him on the motion to dismiss was the existence in Ohio of a statutory scheme of regulation sufficient to satisfy the McCarran Act and not how the scheme worked in actual practice.

2. Cf. Federal Trade Commission v. National Casualty Co., 357 U.S. 560, 564– 565, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1960).

Concluding, as we do, that the complaint failed to state a claim on which relief could be granted, it would not be proper to remand the action to the district court for consideration of any possible factual issues.

Affirmed.