Charlene MATHIS, Plaintiff,

v.

**AUTOMOBILE CLUB INTER–INSUR-
ANCE EXCHANGE et al.,
Defendants.**

No. 73 CV 656–W–1.

United States District Court,
W. D. Missouri, W. D.

April 13, 1976.

Charles C. Shafer, Jr., A. Howard Chamberlin, Kansas City, Mo., for plaintiff.

Lewis C. Green, Green, Hennings & Henry, St. Louis, Mo., Harry P. Thomson, Jr., Shughart, Thomson & Kilroy, Thomas J. Conway, Popham, Popham, Conway, Sweeny & Fremont, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

This is an antitrust action for treble damages and injunctive relief under the Sherman Act, 15 U.S.C. § 1 *et seq.*, and the Clayton Act, 15 U.S.C. § 12 *et seq.* Defendants are the Automobile Club of Missouri (hereinafter the Club), a not-for-profit corporation organized under the laws of Missouri; the Automobile Club Inter-Insurance Exchange (hereinafter ACIIE), a reciprocal inter-insurance exchange organized under the laws of Missouri;[1] and the Club Exchange Corporation, the attorney-in-fact for the subscribers to the Exchange.[2] Jurisdiction is predicated on 28 U.S.C. § 1337.

Plaintiff alleges that she was required to purchase a membership with the Club in order to obtain automobile insurance from ACIIE. She claims that the requirement of continuing Club membership constitutes an illegal tying arrangement in violation of the antitrust laws. See *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969); *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *International Salt Co., Inc. v. United States*, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947). She also alleges that state insurance laws in Missouri do not regulate the practices of which she complains. She seeks actual damages, measured by the amount of the yearly fee for Club membership ($18.00) and trebled, pursuant to 15 U.S.C. § 15; injunctive relief to prevent defendants from conditioning automobile insurance on the payment of the Club membership fee, and reasonable attorneys' fees. In the alternative, plaintiff asks for a pro rata refund of the membership fee for those whose insurance has been terminated.[3]

Defendants, in essence, admit that insurance provided through ACIIE is available only to members of the Club. If a person desires to obtain automobile insurance through ACIIE he or she must first join the Club and pay the membership fee. Similarly, renewals of ACIIE insurance are made only to those who are members in good standing of the Club. Defendant claims that its rule limiting automobile insurance to members of the Club was fashioned for the business purpose of limiting the risks involved, since, it is argued, Club members are considered to be better drivers than the general public.

Defendants have moved for summary judgment on the ground that the conduct about which plaintiff complains is exempt from federal antitrust laws under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* That Act exempts insurance carriers from federal antitrust suits where the business of insurance is "regulated by State law," 15 U.S.C. § 1012(b). Plaintiff contends (1) that Missouri State law does not, in fact, regulate the specific conduct alleged to be in violation of the federal antitrust laws, and (2) that plaintiff's allegations come within the boycott exception to the McCarran-Ferguson exemption, 15 U.S.C. § 1013(b).[4] We find and conclude that

---

1. See V.A.M.S. § 379.650 (1968). A reciprocal or inter-insurance exchange is "an aggregation of persons, called subscribers, who, through an attorney-in-fact, cooperate to furnish themselves and each other insurance against a designated risk." See *United States v. Weber Paper Co.*, 320 F.2d 199, 201, n. 3 (8th Cir. 1963).

2. See V.A.M.S. § 379.660 (1968).

3. No class action allegation is contained in the complaint. Because of our disposition of the antitrust claims, we find no independent jurisdiction to entertain plaintiff's alternative request for relief.

4. Plaintiff's response to defendants' motion was not timely filed. On March 8, 1976, we issued an Order to Show Cause why defendants' motion should not be granted for plaintiff's failure to respond. Plaintiff responded with a motion for an extension of time which was opposed in a timely response filed by defendants. However, before the Court could act upon plaintiff's motion, she filed her suggestions in opposition to defendants' motion

the McCarran-Ferguson exemption is applicable here, and that defendants' motion for summary judgment should be granted.

## II.

### THE McCARRAN–FERGUSON EXEMPTION

The McCarran-Ferguson Act was the Congressional response to the Supreme Court's reversal of the doctrine that insurance transactions were not subject to federal regulation under the Commerce Clause.[5] The Fifth Circuit has succinctly stated the historical basis of the act:

In 1869 the Supreme Court held that "[i]ssuing a policy of insurance is not a transaction of commerce." *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 183, 19 L.Ed. 357 (1869). After that decision, it was widely assumed that congressional regulation of the insurance business was improper. But in 1944 the Supreme Court held that insurance transactions were subject to congressional regulation in general, and the strictures of the anti-trust laws in particular. *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Congress responded to the *South-Eastern Underwriters* decision with the McCarran-Ferguson Act. That Act "was an attempt to turn back the clock, to assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation." *Securities & Exch. Comm'n. v. National Securities, Inc.*, 393 U.S. 453, 459, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). Congress was particularly concerned lest federal anti-trust laws interfere with the rate-making regulatory schemes of individual states. *Id.* at 458–459, 89 S.Ct. at 567–568. [*Meicler v. Aetna Casualty and Surety Co.*, 506 F.2d 732, 733 (5th Cir. 1975).]

In *S.E.C. v. National Securities, Inc., supra*, the Court dealt with the scope of the McCarran-Ferguson exemption in the context of an action alleging a violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b). Defendants were alleged to have carried out a fraudulent scheme in connection with the merger of two insurance companies. In holding that McCarran-Ferguson had no applicability to this situation, the Court delineated the type of regulation which was contemplated by the Congress:

Congress was concerned with the type of state regulation that centers around the contract of insurance, the transaction which *Paul v. Virginia* held was not "commerce." The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the "business of insurance." [*Id.* 393 U.S. at 460, 89 S.Ct. at 568, 21 L.Ed.2d at 676.]

---

for summary judgment. Since the motion for extension of time is now moot, we will grant plaintiff leave to file her suggestions out of time and consider the arguments presented therein.

**5.** The McCarran-Ferguson Act provides in relevant part:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, . . . . unless such Act specifically relates to the business of insurance; *Provided*, That . . the Sherman Act and . . . . the Clayton Act, and . . . the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law. [15 U.S.C. § 1012(b). Emphasis added]

■ It is then the insured-insurer relationship which is the focus of the McCarran-Ferguson exemption. Courts have continually applied the exemption to suits by policyholders where the individual states regulate that basic "core" of the business of insurance. See, e. g., *Dexter v. Equitable Life Assurance Society,* 527 F.2d 233 (2d Cir. 1975); *Addrisi v. Equitable Life Assurance Society,* 503 F.2d 725 (9th Cir. 1974); *Meicler v. Aetna Casualty and Surety Co., supra; Ohio A.F.L.–C.I.O. v. Insurance Rating Board,* 451 F.2d 1178 (6th Cir. 1971). Most recently in *Lawyers Title Co. v. St. Paul Title Insurance Corp.,* 526 F.2d 795 (8th Cir. 1975), the Eighth Circuit held that an antitrust action alleging unfairly restrained competition through predatory pricing of title insurance in the St Louis, Missouri metropolitan area was barred by the McCarran-Ferguson exemption. Judge Lay concluded that the State of Missouri had enacted a "comprehensive scheme for the control of title insurance pricing" and therefore no federal antitrust action could be maintained, regardless of the effectiveness of state regulations. *Id.* at 797.

■ We turn then to an examination of the statutory scheme of insurance regulation in Missouri. If the state "has generally, authorized or permitted certain standards of conduct" in the insurer-insured relationship, then it must be concluded that it is regulating the business of insurance within the meaning of the McCarran-Ferguson Act. *Ohio A.F.L.–C.I.O. v. Insurance Rating Board, supra,* at 1181 (quoting *California League of Independent Insurance Producers v. Aetna Casualty & Surety Co.,* 175 F.Supp. 857, 860 (N.D.Cal.1970)).

### III.

### MISSOURI STATUTORY SCHEME

The operation of reciprocal or inter-insurance exchanges in Missouri is governed by V.A.M.S. §§ ·379.650 to 379.800. The subscribers to the exchange must file, through their attorney-in-fact, a verified declaration concerning the nature of their business, including a copy of the form of policy contract under which insurance is to be issued. V.A. M.S. § 379.670. The exchange must receive a certificate of authority from the state director of insurance by stating that it is complying with all the statutory requirements for such an organization. V.A.M.S. §§ 379.750(1) (Supp. 1975). The director of insurance, upon notice and opportunity for hearing, may revoke or suspend the certificate of any exchange that has not complied with the conditions for operation contained in §§ 379.650 to 379.790. V.A.M.S. § 379.-750(2) (Supp.1975).

Moreover, under § 379.780, an inter-insurance exchange is specifically subject to rate regulation under the Casualty and Surety Rate Regulatory Law, V.A. M.S. §§ 379.420–510. It is also subject to the provisions of the Missouri Unfair Practices and Frauds Act, V.A.M.S. § 375.930 *et seq.,* which expressly regulates "trade practices in the business of insurance in accordance with the intent of Congress as expressed in [the McCarran-Ferguson Act]." V.A.M.S. § 375.930. Under the Unfair Practices Act, Missouri proscribes any unfair discrimination between individuals "in the *amount of premium, policy fees, or rates charged* for any policy or contract . . . *or in any of the terms or conditions of such contract or in any other manner whatever* . . .." V.A.M.S. § 375.936(8)(b) (Supp.1975) [Emphasis added.] The state superintendent of insurance is empowered to investigate for possible violations of the Unfair Practices and Frauds Act, hold hearings on alleged violations and issue cease and desist orders if he determines that an insurance carrier is engaging in a practice prohibited by the Act. V.A.M.S. § 375.938–942.

■ The Missouri statutes clearly present the type of comprehensive regulatory scheme for the inter-insurance exchange-subscriber relationship which was contemplated by the Congress in enacting the McCarran-Ferguson Act. Those statutes both generally and specifically regulate the pricing practices and con-

duct of inter-insurance exchanges. *Lawyers Title Co. v. St. Paul Title Insurance Corp., supra.* They generally authorize or permit certain standards of conduct. *Ohio A.F.L.–C.I.O. v. Insurance Rating Board, supra.* We find and conclude that the laws of Missouri sufficiently regulate the conduct and policies of defendants ACIIE and Club Exchange Corporation,[6] including the conduct about which plaintiff complains, to invoke the McCarran-Ferguson exemption.[7]

## IV.

## BOYCOTT EXCEPTION TO McCARRAN–FERGUSON ACT

Plaintiff argues that even if the McCarran-Ferguson exemption applies to this case, she may still avoid its effect by means of the provisions of the Act excepting from its coverage "any agreement to boycott, coerce, or intimidate or act of boycott, coercion or intimidation" 15 U.S.C. § 1013(b). We find this argument without merit.

6. It is, of course, true that only defendants ACIIE and Club Exchange Corporation are subject to state regulation of insurance businesses. However, no cause of action is asserted against the Automobile Club individually. Plaintiff alleges only a combination and conspiracy in restraint of trade. If the McCarran-Ferguson exemption covers the former defendants, then plaintiff is left with no cause of action against the Club alone. We express no opinion on whether the Club can claim an exemption from the federal antitrust laws under McCarran-Ferguson.

7. Plaintiff argues that although the state regulatory scheme in Missouri may provide general standards governing the business of insurance "no state statute covers the tainted, prohibited, illegal, unlawful tie-in involved here." And if no state statute governs this practice, then, according to plaintiff, the McCarran-Ferguson exemption does not apply. We must reject this argument as both legally and factually incorrect.

First, it has been held that whether the state system of regulation specifically regulates the act alleged to be in violation of the antitrust laws is not relevant to the McCarran-Ferguson exemption. In *Addrisi v. Equitable Life Assurance Society, supra,* the court dealt with an alleged tying arrangement whereby defendant required any person seeking a home loan to purchase a type of life insurance. In holding that McCarran-Ferguson barred this action,

The boycott exception was intended to apply to insurance company "blacklists" which prohibit agents from selling insurance for a particular company on pain of being cut off entirely by the governing organization of insurance companies. *Addrisi v. Equitable Life Assurance Society, supra,* at 728. *Transnational Insurance Co. v. Rosenlund,* 261 F.Supp. 12, 26–27 (D.Or.1966). No cases have been cited which construe the boycott exception to cover an alleged combination or conspiracy to boycott, coerce or intimidate *policyholders. Meicler v. Aetna Casualty and Surety Co.,* 372 F.Supp. 509, 514 (S.D.Tex.1974), aff'd 506 F.2d 732 (5th Cir. 1975). To broadly interpret the boycott exception, as plaintiff urges, would result in a total emasculation of the McCarran-Ferguson exemption itself. *Meicler, supra,* at 734.

Plaintiff finally urges that we should deny defendants' motion for summary judgment on the ground that there is a genuine issue of material fact, with-

the court stated that "whether the California laws proscribe or permit the alleged acts of economic coercion in the issuance of life insurance policies is of no concern to the full force and effect of [the McCarran-Ferguson exemption]" 503 F.2d at 728.

Second, assuming *arguendo* that McCarran-Ferguson does require regulation of the specific practice complained of, we find that Missouri does indeed regulate the tying arrangement alleged by plaintiff in this case. In the material filed by defendants along with their summary judgment motion, which is undisputed by plaintiff, is included a complaint by a former ACIIE policyholder which was filed with the Missouri Division of Insurance. Complainant alleged that ACIIE had refused to renew his automobile insurance because he had not maintained his membership in the Automobile Club. The Division of Insurance found nothing improper in this practice. However, in other documents filed with the Court, and also undisputed by plaintiff, the Superintendent of Insurance specifically required the Farm Bureau Mutual Insurance Company to reduce its premium on automobile assigned-risk insureds by the amount of the Farm Bureau membership fee, which was a condition of coverage, so that the final charge to the policyholder would not be in excess of uniformly approved rates. Clearly, then, Missouri does regulate the tying arrangement which is the subject of this action.

in the meaning of Rule 56(c) of the Federal Rules of Civil Procedure, as to whether defendants' actions constitute a boycott. Plaintiff has not filed any affidavits or other material to support her bald assertion that the boycott question is a genuine issue of material fact. Fed. R.Civ.P. 56(e). Even if we were to conclude that there is a genuine factual dispute on this matter, our discussion of the above cited cases obviously reveals that the boycott exception simply does not cover any allegation of a combination or conspiracy directed at policyholders. We find and conclude that no genuine issue of fact exists with respect to the boycott question, and that even if one did exist, it would not be material to the legal issues presented in this case.

### V.

In summary then, we find that the McCarran-Ferguson exemption of the business of insurance from the purview of the federal antitrust laws applies, that the laws of Missouri regulate, both generally and specifically, the practices, rates and conduct of inter-insurance exchanges and that the boycott exception to McCarran-Ferguson is not applicable to the facts of this case. Consequently, under McCarran-Ferguson, defendants cannot be liable for the alleged violations of the federal antitrust laws. Since there are no genuine issues of material fact, summary judgment for defendants is appropriate.

For the reasons stated, it is

ORDERED (1) that defendants' motion for summary judgment should be and the same is hereby granted. It is further

ORDERED (2) that the Clerk shall forthwith prepare, sign and enter the judgment of this Court on a separate document in accordance with Rule 58, Fed.R.Civ.P.