George STEINBERG

v.

The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA.

Civ. A. No. 78-4377.

United States District Court, E. D. Pennsylvania.

Feb. 28, 1980.

John L. Jenkins, Barsky, Golden & Remick, Philadelphia, Pa., for plaintiff.

Jeffrey R. Lerman, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On May 1, 1973, plaintiff, George Steinberg, entered into an Agreement of General Agency with defendant, the Guardian Life Insurance Company of America, pursuant to which plaintiff became a general agent

of the defendant. On December 29, 1978, plaintiff filed this action alleging two separate and distinct bases of federal jurisdiction. Counts I through VII are based upon diversity jurisdiction. Counts VIII and IX are based upon federal question jurisdiction, specifically Section 1 of the Sherman Act, 15 U.S.C.A. § 1, and Section 3 of the Clayton Act, 15 U.S.C.A. § 14. Defendant filed a motion to dismiss Counts VIII and IX for failure to state a claim, and a motion for a more definite statement as to Counts I through VII.

■ Counts I through VII assert various common law causes of actions against defendant arising from the Agreement of General Agency.[1] Relying on Rule 12(e) of the Federal Rules of Civil Procedure, defendant asserts that it is entitled to a more definite statement with regard to Counts I through VII. Fed.R.Civ.P. 12(e) permits a motion for a more definite statement "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Professor Moore states that "the thrust of Rule 12(e) is designed to strike at unintelligibility rather than want of detail." 2A *Moore's Federal Practice* § 12.18 (2d ed. 1979). Counts I through VII of the complaint are not so vague or ambiguous that the defendant cannot frame a responsive pleading. Additional information may be obtained from the discovery procedures. The Court will, therefore, deny the defendant's motion for a more definite statement as to Counts I through VII.

The complaint in Counts VIII and IX alleges violations of the federal anti-trust laws, specifically Section 1 of the Sherman Act, 15 U.S.C.A. § 1 and Section 3 of the Clayton Act, 15 U.S.C.A. § 14.[2] Defendant filed a motion to dismiss Counts VIII and

IX on the ground that they fail to state claims upon which relief can be granted. The defendant argues that the practices alleged in these Counts concern the relationship between an insurance company and its agent, and are exempt from the federal anti-trust laws by the McCarran-Ferguson Act. 15 U.S.C.A. §§ 1011–1015. The McCarran-Ferguson Act specifically states:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

15 U.S.C.A. § 1012(b). Therefore, in order to determine whether the anti-trust violations alleged by the plaintiff in Counts VIII and IX are exempt by the above quoted provisions of the McCarran-Ferguson Act, we must determine (a) whether the actions alleged come within the meaning of the "business of insurance", and (b) whether such business is regulated by the State of Pennsylvania within the meaning of the Act.

■ *Black v. The Nationwide Mutual Insurance Company,* 429 F.Supp. 458 (W.D.Pa. 1977), *aff'd,* 571 F.2d 571 (3d Cir. 1978) appears to have given an affirmative answer to both (a) and (b). In *Black,* an insurance agent sued three separate, but related, insurance companies which he rep-

---

1. These causes of actions include: (1) wrongful breach; (2) fraudulent misrepresentation; (3) contract of adhesion; (4) tortious and intentional interference; (5) tortious and unfair competition; (6) breach of fiduciary obligations; and (7) illegal forfeiture of plaintiff's contractual and property rights.

2. In Count VIII plaintiff asserts that the tying of plaintiff's general agency to the requirement of full line sales is an illegal tying arrangement and constitutes, per se, a restraint of trade. In Count IX plaintiff asserts that the requirement of submission of all insurance applications solicited by plaintiff to defendant also constitutes, per se, a restraint of trade.

resented, alleging various federal anti-trust violations. The court held that the relationship between an insurance agent and the company which he represents is the "business of insurance" under the McCarran-Ferguson Act and that such business is regulated by the State of Pennsylvania. Judge Weber, in *Black*, stated at 463:

That Pennsylvania has an extensive and general system of statutory regulation of the insurance business is well apparent from the two volume collection of statutes encompassed under Title 40 of Purdon's Pennsylvania Statutes, as well as by the recital of Sec. 1 of the Act of 1947, June 5, P.L. 445 [40 P.S. 1151 et seq.] of the Commonwealth of Pennsylvania, entitled "The Insurance Unfair [sic] Practices Act":

The purpose of this Act is (1) to regulate the business of insurance as contemplated by Public Law 15, 79th Congress . . ." [The McCarran-Ferguson Act, 15 U.S.C.A. §§ 1011–1015.]

It was therefore the intent of the legislature of Pennsylvania to occupy the field of regulating the business of insurance as contemplated by Sec. 2(a) and (b) of the McCarran-Ferguson Act. This intention controls, *California League of Independent Insurance Producers Co. v. Aetna Casualty & Surety Co.*, 175 F.Supp. 857 (N.D.Cal.1959).

The plaintiff contends that *Black* is not controlling in that *Black* relied on the Pennsylvania Unfair Insurance Practices Act [3] prior to the new 1974 Act in making its holding that such business is regulated by the State of Pennsylvania. The plaintiff claims that since the 1974 Act was passed,[4] such business has not been regulated by the State. We disagree. The 1974 Act did not in any way deregulate such business. The 1974 Act, rather than deregulate such business, appears to have mandated a more comprehensive regulation of the "business of insurance" particularly as it applies to the relationship between the plaintiff and the defendant as alleged in the complaint.

(*See generally*, Unfair Insurance Practices Act—The Sleeping Giant, Donald L. Very (1974) 46 Pa.B.A.Q. 438). Furthermore, it is obvious that the Court in *Black* did not rely solely on the Pennsylvania Unfair Insurance Practices Act, but pointed out that the two volume collection of Title 40 of Purdon's Pennsylvania Statutes which encompasses the Unfair Insurance Practices Act proves that Pennsylvania has an extensive statutory regulation of the insurance business. A review of Title 40 shows that Pennsylvania not only regulates the insurance business, but specifically requires the licensing of agents, brokers, managers, and exclusive agents. 40 Pa.Stat.Ann. §§ 231 *et seq.*

In Counts VIII and IX plaintiff alleges violations of Section 1 of the Sherman Act and Section 3 of the Clayton Act, specifically: (a) that the tying of the plaintiff's general agency to the requirement of full line sales is an illegal tying arrangement and constitutes, per se, a restraint of trade (Count VIII); and (b) that the requirement of submission of all insurance applications solicited by plaintiff to defendant also constitutes, per se, a restraint of trade (Count IX). It is apparent that these allegations are covered by the scheme of regulation provided in Title 40 of Purdon's Pennsylvania Statutes. Section 1171.5(a)(4) of the Pennsylvania Unfair Insurance Practices Act prohibits:

Entering into any agreement to commit, or by any concerted action committing, any act or boycott, coercion or intimidation resulting in or tending to result in unreasonable restraint of, or monopoly in, the business of insurance.

Even if the alleged activities were not specifically regulated, the exemption would still be effective as long as the mechanism for regulation was available in Pennsylvania. As stated by Judge Becker in *Schwartz v. Commonwealth Land Title Insurance Co.*, 374 F.Supp. 564 (1974) at 575:

The McCarran-Ferguson Act does not require an examination into the regula-

---

**3.** 40 Pa.Stat.Ann. §§ 1151 *et seq.*

**4.** 40 Pa.Stat.Ann. §§ 1171.1 *et seq.*

tory status of every detail of the business of insurance; it is sufficient that the state regulatory scheme is comprehensive and meaningfully administered. The standard for what constitutes "regulation" within the meaning of the Act so as to activate the exemption has been examined by numerous courts. In *FTC v. National Cas. Co.*, 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958) . . ., the Supreme Court rejected an argument that state regulation had been administered too ineffectively to satisfy the McCarran-Ferguson proviso. As long as the statutory provisions are not "mere pretense," the Court said, the exemption is satisfied where the state "has enacted prohibitory legislation which proscribes unfair insurance advertising and authorizes enforcement through a scheme of administrative supervision." 357 U.S. at 564, 78 S.Ct. [1260] at 1262.

If a state has generally authorized or permitted certain standards of conduct, it is regulating the business of insurance under the McCarran Act. *California League of Independent Ins. Producers v. Aetna Cas. & Sur. Co.*, 175 F.Supp. 857, 860 (N.D.Cal. 1959). This standard was adopted by the Sixth Circuit in *Ohio AFL–CIO v. Insurance Rating Board*, 451 F.2d 1178 (6th Cir. 1971), *cert. denied*, 409 U.S. 917, 93 S.Ct. 215, 34 L.Ed.2d 180 (1972). In *Ohio AFL–CIO*, Judge Miller stated (451 F.2d at 1183–84):

> It is interesting to note that since the passage of the McCarran Act a number of actions have been filed in which the McCarran Act exemption has been examined in terms of state regulation of the business of insurance. Yet in no case has it been decided that the exemption was inapplicable because of a failure of state regulation. . . . [citations omitted].
>
> \*   \*   \*   \*   \*   \*
>
> As we have concluded that the State of Ohio has regulated the business of automobile insurance within the meaning of the McCarran Act exemption, it follows that the district judge was correct in granting the motion to dismiss the com-

plaint. It then became unnecessary for him to consider the motion for summary judgment for, as we have pointed out, the pertinent question before him on the motion to dismiss was the existence in Ohio of a statutory scheme of regulation sufficient to satisfy the McCarran Act and not how the scheme worked in actual practice.

The complaint alleges a relationship between the plaintiff and defendant. The alleged relationship constitutes the "business of insurance" within the meaning of the McCarran-Ferguson Act. As heretofore pointed out, such business is regulated by the State of Pennsylvania within the meaning of the McCarran-Ferguson Act. Therefore, the Court will dismiss Counts VIII and IX for failure to state a claim upon which relief can be granted.