Donal PIERUCCI

v.

CONTINENTAL CASUALTY COMPANY.

Civ. A. No. 76–736.

United States District Court,
W. D. Pennsylvania.

Sept. 1, 1976.

Jay D. Glasser, Pittsburgh, Pa., for plaintiff.

W. Arch Irvin, Jr., Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER: DEFENDANT'S MOTION TO DISMISS

KNOX, District Judge.

This suit was brought by plaintiff on behalf of himself and others similarly situated versus Continental Casualty Company, on its own behalf and on behalf of all others similarly situated claiming that a conspiracy and restraint of trade has existed and still exists in violation of the antitrust laws with respect to contracts of professional liability insurance issued to architects, engineers and others, providing professional liability protection. The complaint in paragraphs 4–7 inclusive contains allegations seeking a class action to consist of plaintiffs of all past and present architects and engineers who have purchased policies of professional liability insurance from the representative defendant or other members of the class of defendants. Defendant has filed a motion to dismiss claiming that a class action should not be permitted and also claiming that the defendant is exempt from the operation of the antitrust laws as an insurance company pursuant to the provisions of the McCarran Ferguson Act, 15 U.S.C. §§ 1011–1015.

### I. Class Action.

◼ The class action will be denied. Pursuant to Rule 23(c) the court determines that the case cannot be maintained as a class action, because it is not shown that the claims of the plaintiffs are typical of those of the other members of the class and with respect to the allegations of coercion and tying, it would appear that to the extent a class action is sought under 23(b)(3), the same would become unmanageable.

This court has held that where there are claims of tying resulting in coercion, a class action cannot be maintained because the claims of the individual plaintiffs are not necessarily typical of those of the class and for the further reason the result would be a myriad of mini law suits to determine the exact extent of coercion in each individual case. Therefore, the class action is not su-

perior to other available means for determining the controversy and it further does not appear in view of the allegations of coercion that the party opposing the class has acted or refused to act on grounds generally applicable to the class.

There has as yet been no motion to certify a class action under our Rule 34(c) * but nevertheless under Rule 23(c) FRCP, the court is required to determine the matter us soon as practical. The question has already been fully argued to the court and we now determine that the case shall not be maintained as a class action. See *Stavrides v. Mellon Bank, NA,* (W.D.Pa.1975) 69 F.R.D. 424 and *Ungar v. Dunkin' Donuts,* 531 F.2d 1211 (3d Cir. 1976), wherein the court held that a class action was inappropriate where there was a claim of tying arrangement in a franchise case.

II. Application of the Insurance Exemption to the Antitrust Laws.

The relevant sections of the McCarran Ferguson Act are found at 15 U.S.C. Chapter 20, §§ 1011, 1012 and 1013:

§ 1011. "Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States. Mar. 9, 1945, c. 20, § 1, 59 Stat. 33."

§ 1012. "(a) The business of insurance, and every person engaged therein shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948,

the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law. Mar. 9, 1945, c. 20, § 2, 59 Stat. 34; Jul. 25, 1947 c. 326, 61 Stat. 448."

§ 1013. "(a) Until June 20, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act. and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, and the Act of June 19, 1936, known as the Robinson-Patman Anti-Discrimination Act, shall not apply to the business of insurance or to acts in the conduct thereof.

(b) Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation. Mar. 9, 1945, c. 20, § 3, 59 Stat. 34; July 25, 1947, c. 326, 61 Stat. 448."

It is common knowledge that this act limiting the effect of the antitrust laws upon the insurance business was passed by Congress to alleviate the effect upon the insurance companies of the case of *U. S. v. South-Eastern Underwriters Assn.,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) which undermined the early decision of the U.S. Supreme Court in *Paul v. Virginia,* 8 Wall. U.S. 168, 19 L.Ed. 357 (1869) holding that contracts of insurance were not commerce at all. *U. S. v. South-Eastern Underwriters Association* indicated that the insurance business was subject to the antitrust laws.

The complaint in this case does charge coercion and tying arrangements with respect to certain clauses contained in contracts of professional liability insurance and

* NOTE: Such a motion was filed August 30, 1976, after this memorandum had been prepared and is denied by this order.

alleges that defendant and other insurance companies as co-conspirators engaged in an unlawful combination and conspiracy to cause an unreasonable restraint of interstate trade and commerce in violation of the Sherman Antitrust Act 15 U.S.C. §§ 1 and 2 in fixing the prices of professional liability insurance and also fixing the terms of such policies. It is particularly claimed that the limitations contained in the policy period are such as to render the policy inapplicable to many claims brought against the plaintiff as an architect for professional liability involving professional errors, omissions and negligence for which defendant could not be held liable notwithstanding that plaintiff considered that he had bought coverage.

The language in the policy complained of is:

"The insurance afforded by this policy applies to errors, omissions and negligent acts which occur within the United States of America, its territories or possessions, or Canada during this policy period if claim therefor is first made against the insured during this policy period."

It would seem that with such language in the policy the coverage is a snare and a delusion. For instance if the engineer or architect would make an error or omission on June 15, 1969 (the policy originally was June 27, 1968–June 15, 1969), but claim was not made against the insured until July 1, 1969, there would be no coverage because the claim was not first made during the policy period. This would be particularly true in case the insured secured coverage from another company for the ensuing year. When one considers that claims against architects and engineers are often made some years later when the defect comes to light, it is apparent that very little protection is afforded by such a policy. The plaintiff therefore claims that he is coerced into renewing the policy in the same company forever.

With respect to the McCarran Ferguson Act, the Supreme Court has spoken in *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) and held that the Act in question does not bar remedies sought against an insurance company even though they affect a matter subject to state regulations. The case involved a merger of insurance companies approved by the Arizona Insurance Department as to which the SEC objected claiming that there were violations of Rule 10(b)(5) of the SEC. The lower court had dismissed the complaint for failure to state a claim upon which relief could be granted in light of the McCarran Ferguson Act and the Ninth Circuit had affirmed. The United States Supreme Court held, however, that the act in question did not bar remedies under the Securities Act even though they did affect matters subject to the State Insurance Director and remanded the case for trial in the district court.

Again, in *Schwartz v. Commonwealth Land Title Insurance Co.* 384 F.Supp. 302 (E.D.Pa.1974), Judge Becker in the Eastern District of Pennsylvania held that laxness on the part of the Pennsylvania Insurance Department, if any, in allowing title insurance companies to collect certain charges did not constitute non-regulation within the provisions of the McCarran Ferguson Act where there was no evidence that the regulatory scheme was a mere sham or pretense. A motion to dismiss treated as a motion for summary judgment filed by the defendant was granted. The court relied heavily upon *Ohio AFL–CIO v. Insurance Rating Board*, 451 F.2d 1178 (6th Cir. 1971) and the dissent of Mr. Justice Douglas on denial of certiorari.

There is no contention in this case that the very comprehensive regulation of the insurance business adopted by the Pennsylvania Legislature as contained in 40 Purdon's P.S. § 341, et seq. is a sham and a pretense. As pointed out hereafter, there may have been errors or some inadvertence in approving a policy in this form but that does not take the case out from under the McCarran Ferguson Act.

The first amendment to the complaint filed by plaintiffs in an attempt to meet the original motion to dismiss alleges that plaintiffs and other members of the class

were forced to purchase and continue to carry policies of insurance issued by the defendant by agreements intended to boycott, coerce or intimidate and/or by acts of boycott, coercion or intimidation and that said acts constituted an attempt to monopolize by the named defendant in violation of the Sherman and Clayton Acts.

The Third Circuit has dealt with this statute in *Travelers Insurance Co. v. Blue Cross of Western Pennsylvania,* 481 F.2d 80 (3d Cir. 1973) affirming the decision by now Chief Judge Sorg of this court at 361 F.Supp. 774. In that case the suit against Blue Cross for alleged antitrust violations was dismissed after trial on the merits. The court held that the McCarran Ferguson Act furnished an umbrella which protected the Blue Cross with respect to its rates and in any event no violation of the antitrust laws had been shown. It was held that the inter-relation of Blue Cross rates with hospital profits was part of the business of insurance subject to regulation by the Insurance Commissioner of Pennsylvania, that the record showed aggressive state regulation of the insurance business and that there was no evidence of coercion.

We find the decision by the Third Circuit, which is binding upon us, to dictate that this case must be dismissed. It will be noted that in 15 U.S.C. § 1011, Congress stated that silence on its part should not be construed to impose any barrier to regulation or taxation on the business of insurance by the several states. In Section 1012, it is stated that the business of insurance shall be subject to the laws of the several states which relate to the regulation or taxation of such business and it is further provided in 1012 that no act of congress shall be construed to invalidate or supersede any law enacted by any state for the purpose of regulating the business of insurance. It provided that the Sherman Act and the Clayton Act after June 30, 1948, should be applicable to the business of insurance only to the extent that such business is not regulated by state law. We hold that the issuance of policies and forms which are used by the various companies constitute part of the business of insurance which is regulated by the State of Pennsylvania in comprehensive legislation.

It is true that in 15 U.S.C. § 1013(b) it is provided that nothing contained in this chapter shall render the Sherman Act inapplicable to any agreement to boycott, coerce or intimidate acts of such nature. But as shown by other cases, it is clear that this only applies to acts of coercion and boycotting which do not involve interaction between an insurance company and its policy holders as here.

In *Meicler v. Aetna Casualty and Surety Co.,* 506 F.2d 732 (5th Cir. 1975) affirming 372 F.Supp. 509, the Court of Appeals for the Fifth Circuit per Thornberry, Circuit Judge, held that the imposition of higher rates against policy holders who had bad driving records and which rates had been adopted by the State Board of Insurance in Texas involving a comprehensive state regulatory scheme with respect to the insurance business were not subject to charges in violation of the antitrust laws. The court noted that the legislative history indicated that the boycott exception was intended to reach insurance company black lists rather than refusals to sell to a particular segment of the public at other than a specified price and that the construction contended for with respect to Section 1013(b) by the plaintiffs would emasculate the antitrust exception contained in Section 1012(b) of McCarran Ferguson. See also Footnote # 9 to the lower court's decision in this case at 372 F.Supp. 514 wherein Judge Sears said:

"Neither party has cited nor can this court locate any decision applying to § 1013(b) in the context of an alleged combination of insurance companies to boycott, coerce or intimidate policyholders at large."

Again, in *Addrisi v. Equitable Life Assurance Society,* 503 F.2d 725 (9th Cir. 1974) complaints against an insurance lender enterprise of a life insurance company alleged to be in violation of the antitrust laws were held covered by the exemption in the McCarran Ferguson Act as part of the business of insurance. The complaint was dis-

missed for failure to state a claim upon which relief could be granted and for lack of jurisdiction. The court said:

"We agree with the rationale expressed in each of those cases in that it is evident from an examination of the legislative history behind Section 1013(b) that the intent of Congress was to reserve unto the reach of the Sherman Act only a narrow area of restraint of trade activity among those in the business of insurance, namely, antitrust acts among insurance companies and agents for the purpose of boycott or coercion among insurance companies and agents . . ."

and stated that it agreed with the lower court in *Meicler* that there was no decision applying 1013(b) as to acts involving policy holders at large.

Again, in *Ohio AFL–CIO*, supra, 451 F.2d 1178 (6th Cir. 1971) it was pointed out that the antitrust laws only apply to the extent that the business of insurance is not regulated by the state. The court approved the following statement:

"From the above case, it would seem to follow that if a state has generally authorized or permitted certain standards of conduct, it is regulating the business of insurance under the McCarran Act."

The court further said:

" . . . In no case has it been decided that the exemption was inapplicable because of failure of state regulation."

With respect to the argument that the state had been lax or guilty of non-enforcement, the court said:

"These statements do not necessarily establish a policy of non-enforcement in Ohio and certainly are insufficient to show that the regulation of insurance in that state is a mere 'sham' or 'pretense'."

It was held that the lower court properly granted a motion to dismiss and it was said:

"The pertinent question before him (the lower court) on the motion to dismiss was the existence in Ohio of a statutory scheme of regulations sufficient to satisfy the McCarran Act *and not how the scheme worked in actual practice.*"

The Pennsylvania regulation of insurance covers almost every conceivable aspect of the insurance business (40 Purdon's P.S. § 341 et seq) and it will be noted that 40 P.S. § 477a prohibits unfair discrimination between individuals of the same class. More important to this case is 477b which provides for approval of policies, contracts and so forth and prohibits the use thereof unless approved. This provides insofar as is relevant as follows:

"It shall be unlawful for any insurance company, association, or exchange, including domestic mutual fire insurance companies, doing business in this Commonwealth, to issue, sell, or dispose of any policy, contract, or certificate, covering life, health, accident, personal liability, fire, marine, title, and all forms of casualty insurance, or contracts pertaining to pure endowments or annuities, or any other contracts of insurance, or use applications, riders, or endorsements, in connection therewith, until the forms of the same have been submitted to and formally approved by the Insurance Commissioner, and copies filed in the Insurance Department, except riders and endorsements relating to the manner of distribution of benefits, and to the reservation of rights and benefits under any such policy, and used at the request of the individual policyholder, and except any forms which, in the opinion of the Insurance Commissioner, do not require his approval . . ."

In other words, if there are complaints about improvident approval of this form as to professional liability insurance such complaints should be taken to the Pennsylvania Insurance Commissioner and not to this court.

Pennsylvania has also adopted an Unfair Insurance Practices Act, 40 P.S. § 1171.1, et seq which prohibits various unfair and deceptive practices and provides for redress for the same and penalties.

In light of the very extensive regulation of insurance companies and forms of their policies by the Commonwealth of Pennsylvania, we conclude that it would amount to

complete disregard of the McCarran Ferguson Act for this court to proceed further with this suit. We must therefore enter an order dismissing the same.