**Russell W. BLACK, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY et al., Defendants.**

Civ. A. No. 74–25 ERIE.

United States District Court, W. D. Pennsylvania.

April 1, 1977.

John R. Gavin, Robert W. McFate, Oil City, Pa., for plaintiff.

John G. Gent, Erie, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

Plaintiff brings this action against Defendants under Sec. 1 of the Sherman Act, 15 U.S.C. § 1, which provides:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations is declared to be illegal:  .   .   .".

The cause of action pleaded here is one between an insurance agent and the insurance companies that he represented and deals with the business of insurance. The McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015 specifically exempts the business of insurance from the application of the Sherman Act to the extent that such business is regulated by state law, except for Sec. 3(b) of that Act, 15 U.S.C.A. § 1013(b), which provides:

"(b) Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation."

▆ Plaintiff, therefore, must show a contract, combination or conspiracy in the form of a boycott, or coercion or intimidation, which is in restraint of trade.

We have previously dismissed the counts of the complaint asserting various antitrust causes of action because of the limitations of the McCarran-Ferguson Act, leaving the boycott issue for determination. The Defendants now move for Summary Judgment on the "boycott" cause of action.[1]

Plaintiff was a licensed agent of three defendant insurance companies for several years. He was licensed to sell several lines of insurance for the related Nationwide companies: life insurance, and the lines of casualty insurance included in the categories of automobile, fire and inland marine, health and accident, and general liability. It is with the lines of automobile insurance, fire insurance, commercial insurance, homeowner insurance and comprehensive liability insurance that plaintiff bases his antitrust complaint.

The defendants are separate but related insurance companies, each dealing in separate lines of insurance. They do not compete with each other. They operate through a common line of management with common agents. The plaintiff was their agent for selling, writing and accepting applications for insurance from the public. He operated under one agency agreement for all the defendant companies.

The agent's agreement provides:

"4. Exclusive Representation. It is agreed and understood that you will represent us exclusively in the sale and service of insurance. Such exclusive representation shall mean that you will not solicit or write policies of insurance in companies other than those parties to this Agreement, either directly or indirectly, without the written consent of these Companies. It is not intended that the incidental use of voluntary or statutory state or federal insurance plans, or other similar agreements, shall be a violation of this clause."

It is from this clause that the cause of action arises. The plaintiff was terminated by defendant as its agent because of his continued representation of two other insurance companies after defendants' demand that he cease this representation. He claims that this clause is a boycott, and that the demands, threats, pressures and harassments to which he was subjected by the representatives of the defendant companies was the coercion and intimidation contemplated by the McCarran-Ferguson Act.

So far we have been discussing the rock by which plaintiff was held. The hard place developed in 1970 when some of the defendant companies began experiencing a loss situation which caused them to institute a severe reduction in underwriting. This began in the automobile insurance line, which constituted about 75% of all of defendants' sales, and 50% of plaintiff's production. The agents were aware of the

---

1. The prior unpublished Opinion is hereto appended as an appendix.

conditions which led to this reduction, but plaintiff alleges that the full burden of overcoming this loss was placed on the agents. Agents were limited in the writing of new business, they were classified according to the loss ratio of the policies they wrote, and finally, a temporary moratorium on all new business was imposed. The same types of limitations were imposed on fire and homeowners policies.

Plaintiff complained that under these limitations and under the exclusive dealing clause of his contract, he could not stay in business writing exclusively for the Nationwide companies. He was subjected to unannounced inspections and reviews of his files by Nationwide, and it was finally learned that he was writing for two other companies. When faced with demands that he cease this, he refused on the grounds that he could not continue in business writing solely for Nationwide companies under the limitations imposed.

█ Plaintiff does not claim that the exclusive dealing provision of the contract is a per se violation of the antitrust law. Such agency agreements are controlled by the insurance laws of the state and are, therefore, not subject to the federal antitrust laws unless they constitute a "boycott" as that term is used and construed in the McCarran-Ferguson Act. There is no case law that holds such an exclusive agency provision to be such. It was specifically held not to be such in *Kent L. Blackley v. Farmers Insurance Group, Inc.*, C 74–126, D. Utah, August 26, 1976 (unreported), where Judge Anderson held in a similar set of circumstances:

"The court finds nothing in the operation of Farmers that contemplates a 'boycott' of its competitors, agents, or the public. Farmers sells its insurance through exclusive agents. Its competitors are not prevented access to the market, merely access through Farmers agents. They are free to sell their insurance through their own employees or exclusive agents, or through independent agents. They are unfettered by Farmers' agency system from competing with Farmers on whatev-er basis the marketplace will allow and whatever advantage they have achieved through economic power or business acumen. But it is not anticompetitive for Farmers to refuse its competitors the right to sell insurance through Farmers agents.

Farmers agents are obviously restricted in servicing their clients. Where a client's desires conflict with the interests of Farmers, Farmers agents must choose to serve their principal. Plaintiff agreed to abide by paragraph B–1 and was terminated for not doing so; his complaint is that he cannot be an independent agent while representing Farmers. He alleges in classic boycott terms that Farmers demanded that he not represent other insurance companies except as to business Farmers did not want. But such analysis fails to account for the fact that while paragraph B–1 is a restraint on Farmers agents, it is not a restraint on trade. Plaintiff simply wants to do away with Farmers' exclusive agency system so that he can sell his clients whatever insurance they want to buy.

Plaintiff's clients are not subject to any boycott. They are not compelled to buy Farmers policies. They are free to shop around and buy other insurance. They simply cannot engage in one-stop insurance shopping if they do not want or cannot afford Farmers insurance. It is not a restraint of trade to require them to go elsewhere if they do not desire the product plaintiff has, or was, authorized to offer."

*Blackley* differed from the present case in only one respect. There the contract did not require exclusive representation of the defendant companies, but required:

"The agent agrees in consideration of the companies agreements:

1. To sell insurance for the companies and to submit to the companies every request or application for insurance for the classes and lines underwritten by the companies and eligible in accordance with the published rules and manuals. All business acceptable with the companies

and written by the agent will be placed with the companies."

While the "first submission" language in *Blackley* was more favorable to the agent than the "exclusive dealing" language in this case, we nevertheless find *Blackley* persuasive on the question of whether the acts of the defendants constituted a restraint of trade under the Sherman Act. While they were a restraint on plaintiff they did not exert any anticompetitive effect on the business of insurance. Persons desiring insurance were free to buy the insurance coverage of any competitor.

■ While the actions of the Defendants restricted their own agents, they do not fit the requirements of the term "boycott" as it has been applied in the cases under the McCarran-Ferguson Act. In *United States v. South Eastern Underwriters Assn.*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 [1944]; *United States v. Insurance Board of Cleveland*, 144 F.Supp. 684 [N.D.Ohio 1956]; *United States v. New Orleans Insurance Exchange*, 148 F.Supp. 915 [E.D.La.1957], aff'd p. c. 355 U.S. 22, 78 S.Ct. 96, 2 L.Ed.2d 66 [1957]; *Professional & Business Men's Life Ins. Co. v. Bankers Life Co.*, 163 F.Supp. 274 [D.Mont.1958]; *California League of Independent Ins. Producers v. Aetna Casualty & Surety Co.*, 179 F.Supp. 857 [N.D.Cal.1959], there was always present an association of competitors who sought to exclude non-member competitors from the market. The courts have restricted the term "boycott" as used in 15 U.S.C. § 1013(b) to mean:

". . . Section 1013(b) was designed primarily to deal with conspiracies or combinations among insurance companies and agents for the purpose of boycotting or refusing to deal with other insurance companies and agents. There is nothing in the legislative history or case law bearing on this section to indicate that it is applicable to a refusal by insurance companies to deal with particular segments of the public except under fixed classifications and premium rates . . .". *Meicler v. Aetna Casualty and Surety Company*, 372 F.Supp. 509, 513, 514 [S.D. Tex.1974] (*aff'd*, 506 F.2d 732 [5th Cir. 1975],

also

"The word 'boycott' as used in this type of legislation, implies an urging or an agreement with another person to desist from doing business with another. The word does not apply to cases where persons are urged to do business with another. There is a 'boycott' when a competitor urges a customer not to do business or to refrain from doing business with another." *Transnational Insurance Company v. Rosenlund*, 261 F.Supp. 12, 27 [D.Or. 1966].

Numerous cases have found no "boycott" application to a situation where the actions of the insurance companies were directed at policyholders at large. *Addrisi v. Equitable Life Assurance Society*, 503 F.2d 725 [9th Cir. 1974]; *Pierucci v. Continental Casualty Co.*, 418 F.Supp. 704 [W.D.Pa.1976].

In all events it is the effect upon free competition in the business of insurance with which we are concerned, and there is nothing in the evidentiary material supplied in the present case to show that any actions of the defendant companies affected their competitors by excluding them from the sale of insurance to any segment of the public. The restrictions on sales which they imposed affected only themselves or agents who wished to write insurance for them. They only diminished their own sales, and the agents, including plaintiff, who wished to write for other companies were free to leave defendants' agency and write for others. There is nothing in the evidence before us that shows the singling out of any particular company, group of companies or type of company whose access to purchasers of insurance was restricted.

The practices recited by the plaintiff are covered by extensive provisions of the Pennsylvania law governing the business of insurance. The McCarran-Ferguson Act requires that they be left under the control of state law except where they constitute a boycott, coercion or intimidation which constitutes a conspiracy in restraint of trade. Only within this narrow exception does this

court have jurisdiction, and we find the acts complained of not to constitute a boycott, intimidation or restriction in restraint of trade. To do otherwise would constitute a federal invasion into the state system of regulation of insurance, which the McCarran-Ferguson Act forbids.

The evidence that Nationwide personnel made unexpected and unannounced visits to Black's agency and attempted to examine his customer files without his permission is immaterial. While these matters can be considered acts of coercion and intimidation, they were efforts by Nationwide to enforce their contract with Black. Black was told to comply with the contract or face termination as an agent. The legality of these threats and pressures hinges on the lawfulness of their object. The McCarran-Ferguson Act does not prohibit coercion and intimidation in and of itself, but only such coercion and intimidation that would constitute an agreement or act of boycott. The *Blackley* court found that the same type of acts of coercion or intimidation as are alleged here were the efforts of defendants to enforce their contract. Their legality depended upon the lawfulness of the contract which they were intended to enforce.

Summary judgment has in many cases been found an appropriate means for resolving antitrust disputes involving practices of insurance companies. See, e.g., *Commander Leasing Co. v. Transamerica Title Ins. Co.*, 477 F.2d 77 [10th Cir. 1973]; *Schwartz v. Commonwealth Land Title Ins. Co.*, 374 F.Supp. 564, *suppl. opin.* 384 F.Supp. 302 [E.D.Pa.1974].

A very large selection of evidentiary material in the form of documents and depositions has been presented to the court in support of and in opposition to the motion for Summary Judgment. Summary Judgment is not available where there is any genuine issue as to any material fact. We do not consider that the mass of facts laid before the court by both parties reveal genuine issues on material facts. The facts here tend to show the varying and changing underwriting guidelines imposed by the defendant companies upon agents, and per-

haps the rather drastic curtailment imposed on certain lines. While plaintiff argues as to the reasonableness of these restraints, we believe this to be immaterial to the question here, because the business decisions of the defendant companies to preserve their own financial stability, are matters of their own internal control. In any event, we find no anticompetitive effect. We, therefore, hold that there is no genuine issue of material fact as to the essential issues of this case and that Summary Judgment for the Defendants is appropriate.

## APPENDIX

## OPINION

WEBER, Chief Judge.

Plaintiff, an insurance agent, sues the various Nationwide Insurance Companies named herein for violations of the Sherman Anti-trust Act and the Clayton Act 15 U.S. C.A. §§ 1 & 14. Some defendants have filed motions to dismiss based on misnomer or not conducting business in Pennsylvania during the period in question, which cannot be determined at this time because they depend on the production of evidence. Likewise we will deny the motion of all defendants for a more definite statement because the present complaint in our view gives adequate notice of the causes of action pleaded and defendants may resort to discovery to determine the evidentiary support for the allegations.

All defendants join in the motion to dismiss based on the claim that the allegations of the complaint are insufficient in law to support a cause of action cognizable in this court.

Specifically the defendants allege that the complaint does not state a cause of action under the anti-trust laws of the United States because the McCarran-Ferguson Act 15 U.S.C.A. §§ 1011–1015 specifically exempts the business of insurance from the application of the Sherman Act to the extent that such business is regulated by state law, except for any agreement to boycott, coerce or intimidate, or act of boycott, coercion or intimidation.

At the outset we must determine whether the relationship between plaintiff and defendant pertains to the "business of insurance" as covered by the statute.

The relationship between plaintiff and defendant as revealed in the complaint is that plaintiff was an agent and/or representative of the defendant insurance companies, under a written contract, selling, writing and/or accepting applications for policies of insurance for the public, and that his contract was terminated by defendants.

We have no doubt that plaintiff's relationship with defendants was so closely connected to the "core of the insurance business", the "relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation and enforcement" as to come within the scope of the "business of insurance" as defined in *S.E.C. v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668.

"Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class". p. 459, 89 S.Ct. p. 568.

The size of insurance commissions paid by companies to agents because they affect rate structures, is the "business of insurance". *California League of Independent Insurance Producers v. Aetna Casualty & Surety Co.,* 175 F.Supp. 857 (N.D.Cal.1959).

The relationship of hospital payments and insurance rates made the insurance company's arrangement with hospitals "the business of insurance" in *Travelers Insurance Company v. Blue Cross of Western Pennsylvania,* 481 F.2d 80 (3d Cir. 1973).

We conclude that the relationship of the insurance companies with their agent is a matter within the "business of insurance" under the McCarran-Ferguson Act, and that its terms are applicable to the present complaint.

Defendants next attack the recitals of Count I of the Complaint. These recite a contract, combination and conspiracy among defendants constituting an unreasonable restraint of commerce in violation of Sec. 1 of the Sherman Act and Sec. 4 of the Clayton Act, and then in Par. 9 of the complaint specify the acts which constituted such violations. We are convinced that each of the recited specifications deals with matters that are extensively covered by provisions of the Pennsylvania laws regulating the business of insurance, 40 P.S. 1 et seq. That Pennsylvania has an extensive and general system of statutory regulation of the insurance business is well apparent from the two volume collection of statutes encompassed under Title 40 of Purdon's Pennsylvania Statutes, as well as by the recital of Sec. 1 of the Act of 1947, June 5, P.L. 445 [40 P.S. 1151 et seq.] of the Commonwealth of Pennsylvania, entitled "The Insurance Unfair Practices Act":

"The purpose of this Act is (1) to regulate the business of insurance as contemplated by Public Law 15, 79th Congress. . ." [The McCarran-Ferguson Act 15 U.S.C.A. §§ 1011–1015.]

It was therefore the intent of the legislature of Pennsylvania to occupy the field of regulating the business of insurance as contemplated by Sec. 2(a) and (b) of the McCarran-Ferguson Act. This intention controls, *California League of Independent Insurance Producers Co. v. Aetna Casualty & Surety Co.,* 175 F.Supp. 857 (N.D.Cal. 1959).

Under this standard all of the specifications of Count I of plaintiff's complaint must fall. They are all based on allegations of contract, conspiracy and combination in restraint of trade under the anti-trust laws and therefore fall under the exemption of the McCarran-Ferguson Act. A closer examination of the specifications of Count I reveal that in each instance they concern a matter specifically covered under the Pennsylvania statutes, although only a general regulatory scheme by the state is required for the McCarran-Ferguson Act exemption to apply.

Count I of Plaintiff's complaint must therefore be dismissed.

However, the statutory scheme of Congress in relegating to the states the regulation of insurance practices free of the re-

straints of the anti-trust laws of the United States contains an important restriction, Sec. 3(b) of the McCarran-Ferguson Act, 15 U.S.C.A. § 1013(b)

"Nothing contained in this chapter shall render the Sherman Act inapplicable to any agreement to boycott, coerce or intimidate or act of boycott, coercion or intimidation."

Plaintiff's Count II, par. 14 alleges that defendants have made the plaintiff the victim of unreasonable acts of boycott, coercion and intimidation as a means to effect their illegal restraint of trade. There follows in par. 15 of the complaint six specifications of acts of boycott, coercion or intimidation alleged by plaintiff.

Defendants' motion to dismiss is based upon the argument that none of the acts complained of are sufficient to support a claim for relief for violations of the Sherman Act, and that the Pennsylvania "Insurance Unfair Practices Act", 40 P.S. 1151 et seq. does extensively regulate the subject matter of the allegations of Count II in the complaint. We note that Sec. 1152(d) of Title 40 of Purdon's Pa. Statutes is captioned, "Boycott, Coercion and Intimidation" the same subject matter that the McCarran-Ferguson Act reserved from the insurance business anti-trust exemption.

We believe that it is immaterial that the state law also covers in specific detail the same matters as the federal anti-trust laws in view of the express reservation of these areas by Congress.

Defendants assert that the conduct specified by plaintiff under Count II cannot amount to a "boycott" because it does not allege that defendants are in competition with one another, or that they monopolize the industry or otherwise control or restrain trade in the insurance industry because defendants are related insurance companies with a common ownership, each dealing in a separate line of insurance.

The term "boycott" has a variety of meanings in the law.

"In its more modern significance, the term 'boycott' connotes a variety of action ranging from a mere withdrawal of business by an individual to an organized effort by associated individuals to procure all others to withdraw from such intercourse. *It is accomplished by means ranging from simple persuasion* to the disturbance of business relations with third persons and the person boycotted by physical intimidation or violence" *Paramount Enterprises v. Mitchell,* 104 Fla. 407, 140 So. 328, 330, as quoted in *Professional & Business Men's Life Ins. Co. v. Banker's Life Co.,* 163 F.Supp. 274, 281 (D.Mont.1958).

But before we proceed further with a detailed analysis of the case law defining the anti-trust implications of boycott, coercion and intimidation, we should consider the present state of the pleadings. We are dealing with a motion of defendants under F.R.C.P. 12 to dismiss plaintiff's complaint for failure to state a cause of action upon which relief can be granted. All that is required of plaintiff's complaint is governed by F.R.C.P. 8(a). "(1) A short and plain statement of the grounds upon which the Court's jurisdiction depends  .  .  . (2) A short and plain statement of the claim showing that the pleader is entitled to relief." There is no separate procedural rule for anti-trust causes of action.

"At this point, the Court is passing only on the sufficiency of the complaint, and not the proof to support it, *Darnell v. Markwood,* 95 U.S.App.D.C. 111, 220 F.2d 374, 376. How plaintiff may prove its case, and the difficulties it may encounter, are not now before the Court. *Karseal Corp. v. Richfield Oil Corp.,* 9 Cir., 221 F.2d 358, 362, footnote 3." *Professional & Business Men's Life Ins. Co. v. Bankers Life Co.,* cit. supra, p. 284.

Dismissal of a complaint for reasons not going to the merits is not favored in federal procedure. Such dismissal in most cases does not preclude the right of the pleader to amend. The pleader is not required to set out in detail the facts on which he bases his claim. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). He may plead conclusory allegations. *U. S. v. Employing*

*Plasterers' Assoc. of Chicago,* 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954).

"All the law requires to state a private treble damage action are allegations adequate to show a violation of the anti-trust acts and that plaintiff has been damaged thereby. *Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co.,* [364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358]." *Knuth v. Erie-Crawford Dairy Co-op Assoc.,* 395 F.2d 420, 423 (3 Cir. 1968).

In *Professional & Business Men's Life Ins. Co.,* cit. supra, and in *Monarch Life Ins. Co. v. Loyal Protectors Life Ins. Co.,* 326 F.2d 841 (2 Cir. 1963), the Court found that the complaints alleged a conspiracy to boycott, and that a dismissal of the complaint before a plaintiff was allowed to prove that it was injured by conduct violative of the Sherman Act was improper.

With respect to Count II of Plaintiff's complaint, we follow the commanding rule that "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim". 2A Moore's Federal Practice § 12.08. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Safeguard Mutual Ins. Co. v. Miller,* 472 F.2d 732 (3 Cir. 1973); *Lasher v. Shafer,* 460 F.2d 343 (3 Cir. 1972).

However, this is not to rule that Plaintiff must necessarily go to full trial on his complaint. Upon the production of evidentiary materials it is possible that plaintiff's allegations may require more detailed scrutiny upon a motion for summary judgment under F.R.C.P. 56. The distinction between dismissal on failure to state a cause of action under F.R.C.P. 12 and dismissal because of the failure of plaintiff to produce evidence showing a genuine issue of material fact is drawn in *Transnational Insurance Company v. Rosenlund,* 261 F.Supp. 12 (D.Or.1966), involving the same questions as are raised here, and may give the plaintiff pause as to whether to pursue a disputed federal cause of action or the remedies which the state insurance law provides.

The motion to dismiss as to Count II is denied.

### ORDER

And now, this 31st day of July, 1974, IT IS ORDERED that Defendants' motion to dismiss Count I of Plaintiff's Complaint is Granted and Count I is hereby Dismissed.

Defendants' motion to dismiss Count II of Plaintiff's Complaint is Denied.

Defendant's motion for a more specific statement is Denied.

The motions of Defendants Nationwide General Insurance Company and Nationwide Insurance Company to dismiss are denied without prejudice to their renewal upon the production of evidentiary materials necessary for their consideration.